JOHN P. SQUIRE & another *vs.* HENRY C. LINCOLN & others.

Middlesex.   Nov. 22, 1883. — June 28, 1884.   C. ALLEN & HOLMES, JJ., absent.

The bringing of a bill in equity and the issuing of an injunction, under the power a court of equity has to compel or restrain conveyances of property, or to reach and apply in payment of a debt the property, legal or equitable, of a debtor, do not constitute an attachment of property, within the Pub. Sts. c. 157, § 47, authorizing, in certain cases, the lien created by the attachment to continue where the attachment would otherwise be dissolved by proceedings in insolvency.

If a bill in equity is brought against A. and B., and A. becomes insolvent, and his assignee in insolvency is admitted to prosecute the suit, under the Pub. Sts. c. 157, § 47, such assignee is not entitled to a personal decree against B., or to have a conveyance of land held by B. declared void.

If a bill in equity is brought against A. and B., and A. becomes insolvent, but his assignee in insolvency does not intervene in the suit, the plaintiff has the right to prosecute the suit against B.

If the defendant in an action becomes insolvent, and the court of insolvency passes an order, under the Pub. Sts. c. 157, § 47, that the lien created by an attachment in the action shall continue, such order is not conclusive upon the duty of the court in which the action is pending to admit the assignee to prosecute.

FIELD, J.   John P. Squire and Frank O. Squire, copartners
under the style of John P. Squire and Company, on March 30,
1882, brought this suit in equity against Henry C. Lincoln,
John Lincoln, and Volney R. Chamberlin, copartners under
the style of Lincoln, Chamberlin, and Company, and against
Lucia W. Chamberlin, Frances L. Hewlett, and Thomas Curley.
The bill was inserted in a writ, and attachments of real and
personal property have been made under the writ, and an inter-
locutory injunction has been issued restraining some of the
defendants from conveying their interest in the real property
described in the bill.

The substance of the bill is, that the firm of Lincoln, Chamber-
lin, and Company was and is largely indebted to the plaintiffs;
that, while this partnership was so indebted, and was unable
to pay its debts, Volney R. Chamberlin, the managing part-
ner, fraudulently took from the firm large sums of money, and
invested it in real property in his own name, and then executed
mortgages thereon, purporting to secure large sums of money
to Curley, who assigned the mortgages to Lucia W. Chamber-
lin, the wife of Volney R. Chamberlin; that Chamberlin also
executed other mortgages directly to Frances L. Hewlett, his
sister-in-law, and that these mortgages, now held by them, were
given without consideration, and for the fraudulent purpose of
delaying, defeating, and defrauding the creditors of Chamberlin,
and of the firm of Lincoln, Chamberlin, and Company, as Cur-
ley, Mrs. Chamberlin, and Mrs. Hewlett knew; that Chamberlin
also held the title to other real estate subject to a mortgage to
one Sleeper, and, with the same fraudulent purpose, took money
from the firm, paid off this mortgage, and, without having it
discharged, procured an assignment of it to Curley, and from
Curley to Frances L. Hewlett, who now holds it, and that this
assignment was without consideration and fraudulent, as Curley
and Mrs. Hewlett knew; and that Chamberlin, being assignee
of an insolvent estate, as assignee, sold and conveyed by deed
to Mrs. Hewlett certain real property belonging to the estate,
subject to two mortgages, and that one of these mortgages
he caused to be assigned to Mrs. Hewlett, who now holds both
the deed and the mortgage, and that the consideration of both
the deed and the assignment was paid by Chamberlin with

money taken fraudulently from the firm, and the deed and assignment were made to Mrs. Hewlett with the fraudulent purpose of defrauding his creditors and the creditors of the firm, as Mrs. Hewlett knew.

The bill asks that this deed and mortgage may be declared to be the property of the firm, that all the other mortgages may be declared void, and that all of the real property may be applied to the payment of the debt due from the firm to the plaintiffs.

The officer's return of service of the writ shows a general attachment of the real estate in the county of Suffolk of all the defendants except Lucia W. Chamberlin, and of all the real estate of Henry C. Lincoln, John Lincoln, and Volney R. Chamberlin in the county of Middlesex, where all the land described in the bill lies. It also describes what is called a special attachment of five parcels, by specific description, being five of the parcels described in the bill, four of which were parcels purchased by Chamberlin and mortgaged by him, as has been mentioned, and the fifth is the parcel he owned subject to the mortgage to Sleeper. The record title of all these parcels is described in the return as in Chamberlin, subject to the mortgages held by Mrs. Chamberlin and Mrs. Hewlett, which are all described in the return. There is no real estate attached of which the title to the fee or to the equity of redemption is described as in any other person than Volney R. Chamberlin. The parcel described in the bill as having been conveyed by Chamberlin, as assignee, to Mrs. Hewlett, is not specially attached.

The partnership of Lincoln, Chamberlin, and Company, and John Lincoln and Volney R. Chamberlin, were adjudged insolvent debtors in this Commonwealth in April, 1882. Henry C. Lincoln individually was not included, because he was an inhabitant of the State of Missouri. John P. Squire, one of the plaintiffs, was duly appointed assignee in insolvency, and an assignment of the joint and separate estates was made to him on April 15, 1882. On June 26, 1882, Squire, as assignee, presented his petition to the court of insolvency, alleging that certain real estate standing in the name of Frances L. Hewlett, and certain real estate standing in the name of Frances L. Hewlett

otherwise called A. H. Hewlett, as holder of certain mortgages, and certain real estate standing in the name of Lucia W. Chamberlin, as holder of certain mortgages, had been attached in the suit in equity, and that a dissolution of said attachment might prevent the property attached from passing to the assignee; and he prayed that the court would order the lien created by the attachment to continue, pursuant to the Pub. Sts. c. 157, § 47; and on the same day the court of insolvency so ordered.

On October 18, 1882, Squire, as assignee, moved in this court, after setting forth his appointment and the order of the court of insolvency, that he be allowed to appear in and prosecute this suit in equity. The three defendants, Lucia W. Chamberlin, Frances L. Hewlett, and Thomas Curley, appeared and filed a paper admitting that an assignment in insolvency of the joint and separate estates of the firm of Lincoln, Chamberlin, and Company, and of John Lincoln and Volney R. Chamberlin, had been made to Squire as assignee, and that the court of insolvency had ordered the lien created by the attachments to continue, and they prayed that the bill might be dismissed as to them. These two motions have been reserved for the determination of the full court.

It is argued that by the assignment in insolvency the right to avoid these mortgages and the deed made to Mrs. Hewlett, as made in fraud of the creditors of Chamberlin and of the partnership, has vested in the assignee, and no longer exists in the plaintiffs; and although the assignee can bring an action or bill to avoid these conveyances for the benefit of the insolvent estate, that he ought not to be admitted to prosecute this bill of the plaintiffs, who have now no right to prosecute it; that it does not appear that the dissolution of the attachments will prevent any of the property attached from passing to the assignee, because it does not appear that any of the property attached has been conveyed away by any of the insolvent debtors since the attachments, and before the assignment took effect; and that, so far as appears, the title to all the property of the debtors which has been attached has already passed to the assignee.

We think it manifest that the bringing of a bill in equity and the issuing of an injunction under the power a court of equity

has to compel or restrain conveyances of property, or to declare void or valid instruments purporting to be conveyances of property, or to reach and apply in payment of a debt the property legal or equitable of a debtor, do not constitute an attachment of property within the meaning of the Pub. Sts. *c.* 157, §§ 46, 47. The words " attachment on mesne process" have a well-known meaning.

An assignment in insolvency dissolves such an attachment, if made not more than four months prior to the time of the first publication, but the lien created by this attachment may be ordered to continue by the court of insolvency, " or the court to which the process of attachment is returnable." The attachments in this suit were not four months old, and they were by force of the statute dissolved, unless the lien created by them was continued under § 47. The lien is ordered to continue, that the assignee may take charge of the action, recover judgment in it, and levy execution for the benefit of the estate.

Bills or petitions in equity may be inserted in an original writ of summons and attachment; or, during the pendency of the suit, there may be an order for the attachment of property. Pub. Sts. *c.* 151, § 5; *c.* 161, §§ 85–87. See St. 1883, *c.* 223, § 11. If process of attachment issues in a suit in equity, it is served in the same manner as in actions at law, and the provisions generally in the statutes relating to attachments apply to attachments in suits in equity. But the personal jurisdiction exercised by a court of equity, however it may affect property, is not an attachment of property, and does not constitute a lien upon property, within the meaning of the statutes, and courts of insolvency cannot order injunctions in equity to continue, or control the jurisdiction which courts of equity exercise over defendants personally. We are aware that a bill in equity like the one before us is often described as a process of equitable attachment, and that an attachment by trustee process is essentially an equitable proceeding; but the statutes everywhere make a plain distinction between an attachment of property under a writ or process of attachment, and the jurisdiction over persons and property which courts of equity exercise, when defendants have been served with subpœna or with notice of the suit. The remedies, therefore, to which the plaintiffs

would be entitled against these defendants, if no attachments had been made under the writ, are not remedies which an assignee, coming in under the Pub. Sts. c. 157, § 47, can pursue. The rights of property which have been attached, in property liable to be attached and taken on execution for the debts of the insolvent debtors, he can recover, if he can obtain execution in the suit, by levying this execution upon the property attached. But an assignee admitted to prosecute the suit under the Pub. Sts. c. 157, § 47, can only recover a judgment or decree on the plaintiffs' claim against the insolvent debtors, and levy the execution on property which has been attached and can be taken on execution to satisfy this judgment against them. *Bacon* v. *Lincoln*, 2 Cush. 124. *Day* v. *Lamb*, 6 Gray, 523.

As an assignee so admitted to prosecute the plaintiffs' suit, he has no right to prosecute it in order to obtain a personal decree against the defendants who are not insolvent debtors, or for the purpose of declaring conveyances held by them to be void. As assignee, he has a right to bring his actions at law or suits in equity for the purpose of avoiding the mortgages and conveyances held by persons other than the insolvent debtors, if the mortgages and conveyances are fraudulent as against the creditors of the insolvent debtors, under the insolvency laws, and this right is independent of the particular claim of John P. Squire and Company, and exists even if the present bill, after a hearing on its merits, should be dismissed on the ground of it not being proved that the insolvent debtors were indebted to John P. Squire and Company. Although the assignee, if admitted to prosecute this suit under the Pub. Sts. c. 157, § 47, can only proceed by first establishing the indebtedness of the insolvent debtors to John P. Squire and Company, and the suit becomes in effect an action at law, yet it may be that a discharge in insolvency would not be a bar to his prosecuting the suit. *Gardner* v. *Way*, 5 Allen, 452.

In suits in equity like the one at bar, an assignee in insolvency, if he intervene at all, usually intervenes for the purpose of dismissing the bill, on the ground that all the rights of property which the plaintiff seeks to have applied to the payment of his debt have passed to the assignee for the benefit of all the creditors. *Trow* v. *Lovett*, 122 Mass. 571.

It may be that the assignee fears that, if this bill is dismissed, these defendants or some of them may have conveyed, or before he can proceed against them will convey, their interest in the real property to *bona fide* purchasers for value, or that some creditor of Mrs. Hewlett may have attached, or may attach, her interest in the parcel of which the equity of redemption stands in her name, and therefore he desires to amend the bill, so as to make it a bill brought by him, in his right as assignee, for the purpose of avoiding the mortgages and conveyances. But such an amendment is a° very different thing from admitting an assignee to prosecute the suit under the Pub. Sts. *c.* 157, § 47. Whether such an amendment would be allowed, if offered, and consented to by the plaintiffs, and whether the bill, if amended, would not be multifarious, or the remedy be held to be at law, we cannot consider, as no such motion is before us. If such an amendment were allowed, the attachments would not be preserved, because it is not a proceeding under the statute.

We cannot now determine absolutely the motion of these defendants, because the assignee has not yet been admitted to prosecute the suit, and the question whether to the bill as it stands they are not proper parties defendant is not raised, and ought not to be tried on this motion.

The paper filed by these defendants, although called a motion, may perhaps be taken as a supplemental answer, and to set up that, by virtue of the proceedings in insolvency, and the assignment to Squire as assignee, the plaintiffs have no right further to prosecute the suit; but we are of opinion that, if the assignee, having notice of the suit, does not intervene, it is not open to these defendants to set up this defence; it is presumed, then, that the assignee assents to the plaintiffs' prosecuting the suit.

The motion as it stands can only avail as a specification of objections to the motion of the assignee. If the assignee is admitted to prosecute the suit under the Pub. Sts. *c.* 157, § 47, the defendants can renew their objection by demurrer, or other proper pleading.

It has been argued that the order of the court of insolvency continuing the lien is a conclusive adjudication that the assignee may appear in and prosecute the suit, and that, as the order

remains unreversed, it is not competent for this court to refuse to admit him. But we think that the court in which the suit is pending alone has original jurisdiction to determine whether any new party shall be admitted to a suit; and although it would ordinarily follow, as of course, that when the lien had been by any competent court ordered to continue, the assignee would be admitted to prosecute the suit, yet still it is the duty of the court where the suit is pending to determine this, and for that purpose it may hear evidence and decide whether there is any ground under the statute why the assignee should be admitted. The hearing before the court of insolvency is often *ex parte; McIntire* v. *Maynard*, 4 Gray, 429; and that court may not well know the interests of all the parties to any pending suit, and the plaintiff in the suit always has an interest in, and a right to be heard on, the application to admit the assignee, because his admission takes from the plaintiff all the rights he has in the suit.

If the assignee is admitted under the statute, the ultimate result may be that the bill will be dismissed as to these three defendants, and the assignee be compelled to amend by turning the suit into an action at law. If the plaintiffs are willing, perhaps they may prosecute the suit for the benefit of the assignee, although, if prosecuted in this form, it might be defeated by the discharge in insolvency of the insolvent debtors, and the attachments would be dissolved. The motions reserved should be remitted to the court sitting for the county, that the assignee may act as he may be advised, with liberty to press or withdraw his motion.　　　　　*Ordered accordingly.*

*A. A. Ranney & H. G. Nichols*, for the assignee.

*C. Robinson, Jr.*, (*G. A. Blaney* with him,) for the defendants.