## ASA H. HERRING vs. CHARLES H. DOWNING.

Essex.    November 2, 1887. — January 7, 1888.

Present : MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Insolvent Debtor — Action — Assent — Contract — Evidence — Consideration.*

If an assignee of an insolvent debtor has knowledge of the pendency of an action brought by the insolvent upon a contract executed before the insolvency, and does not interfere with the action, his assent to the bringing of the action may be inferred; and the action may be maintained.

The declaration in an action of contract, brought by A. against B., alleged that, in consideration that A. should work up certain stock of B., which had been owned by A., B. agreed that A. should have as his property whatever remained of the stock after paying a promissory note held by B., for the benefit of A.'s creditors, and a certain sum which A. owed B.  There was evidence that A. gave B. a bill of parcels of certain stock, and B. executed a promissory note to A. for the amount, which he did not deliver to A., but retained for the benefit of A.'s creditors, this note being equal to forty per cent of A.'s indebtedness; that, at the time this was done, B. said to A. that he might manufacture the stock, and raise the forty per cent, and that, if there should be anything more after paying that and B.'s claim in full, it should belong to A.; and that A. paid the forty per cent, and B.'s claim in full.  *Held,* that there was evidence to sustain the declaration; and that, on the evidence, the action could be maintained.

CONTRACT.  Writ dated December 27, 1884.  The declaration contained three counts.  The first count was to recover the sum of $3167.17, as a balance found due the plaintiff on an accounting together.  The second count was on an account annexed to recover the sum of $1316.31.  The third count was as follows : " And the plaintiff says that it was agreed by and between the plaintiff and defendant, that, in consideration that the plaintiff and his son should work up certain stock of the defendant, which had been owned and used by the firm of A. H. Herring and Son, in the business of manufacturing shoes, the plaintiff should have as his property whatever remained of said stock after paying from the same a certain note for the amount of $2770.94, which the defendant held for the benefit of the creditors of said A. H. Herring and Son, and a certain claim amounting to $1840.55, which the firm of A. W. Downing and Company (of which the defendant was a member) held against said A. H. Herring and Son.  And the plaintiff says, that, in pursuance of said agreement, said stock was worked up by the

plaintiff and his son, and said note and claim was paid therefrom, and there remained of said stock, after said payments, property of the value of $1316.31, which the defendant retained and refused to deliver to the plaintiff, and deprived the plaintiff of."

Trial in the Superior Court, before *Hammond*, J., who allowed a bill of exceptions, in substance as follows :

The plaintiff introduced evidence tending to show the following facts : The firm of A. H. Herring and Son, which consisted of the plaintiff and his son Edwin A., failed in March, 1883. Their business was that of manufacturing boots and shoes, in Haverhill. Their liabilities at the time of their failure amounted to about $8000, and their assets, which consisted of stock in the various stages of manufacture, manufactured goods, and leather, machinery, and accounts, were worth to them, to use in their business, about $7000, but to sell at forced sale were of much less value. Among the creditors was the firm of Amos W. Downing and Company, leather dealers, who held a claim against them of about $1850. The defendant and his brother, Amos W. Downing, were members of this firm. A. H. Herring furnished the entire capital stock of A. H. Herring and Son, but it did not exceed in amount the sum of $500. He was on friendly terms with Amos W. Downing and Company, and was an old friend of Amos W. Downing.

Upon the failure of A. H. Herring and Son, a meeting of their creditors was called. The creditors present were disposed to deal easily with the debtors, and voted unanimously to settle for forty cents on a dollar. An attempt to settle on that basis proved unsuccessful, owing to the refusal of two or three creditors (one of whom resided out of the State) to accept it, and the plaintiff and his son continued, without interruption, to work the business along until June 11, 1883. At that date the amount of their liabilities and the value of their assets remained substantially the same as at the time of their failure; but, having no credit, and little money, they were unable to continue, and were liable at any time to suit and attachment.

On June 11, 1883, A. H. Herring and Son signed and delivered to the defendant a receipted bill of parcels of all the assets of A. H. Herring and Son, for the expressed amount of

$2770.94, and the defendant on the same day signed a promissory note of that date for the sum of $2770.94, payable to the order of A. H. Herring and Son, in six months from date, without interest.

Both parties admitted that $2770.94 was all that the goods were fairly worth to sell; but there was testimony in the case, which, as before stated, tended to show that said goods were of much greater value to the plaintiff, to be used by him in business in connection with his customers.

The note and bill of sale were both taken by the defendant, and retained in his possession, and the testimony of both parties tended to show that the note was retained by the defendant, as the property of A. H. Herring and Son, for the benefit of their creditors.

The sum of $2770.94 was supposed by the parties to be forty per cent of A. H. Herring and Son's indebtedness. The plaintiff and his son, Edwin A., differed in their testimony of the conversation with the defendant at the time the bill of parcels and note were given, but it was upon this conversation and the other evidence in the case that the plaintiff based his right of action, admitting, as he did, that, if he was entitled to recover on one count, he could not recover on the other.

The plaintiff testified that the note and the bill of parcels were signed on or about June 11, and that, at that time, this conversation took place: " I.told Downing that we would give him a bill of sale for forty per cent, the sum that the creditors voted to take, or were willing to take, and he to give a note for that amount. He said he would take the bill of sale, and give his note for that amount, and then said that we might go on as before, and continue to manufacture, and raise the amount of the indebtedness, the forty per cent, and that, if there should be anything over after paying that, it should be mine."

Edwin A. Herring, who was present at the interview testified to by his father, gave the following testimony: " On June 11, 1883, we took to Downing this bill of sale of the entire stock and business, amounting to some $2700 or $2800. Prior to that time, we wished to sell the property for the amount that the majority of the creditors, all the creditors that attended the meeting, had agreed to take, for the purpose of preserving that

for them. We therefore went to Charles Downing, and asked if he would not buy it for that amount. He said he wished us to bring over a statement of the amount of property that was there, with its value, what it was fairly worth in the business. We did so. We made out an itemized account; we went through the stock at the time we made this second schedule for Downing, and made an estimate of what it was worth to the business. We took the schedule to him. He had the schedule before him on his desk when we had the interview, and was glancing over the items of it, and asked some questions for information about the schedule and about the values. I know one thing he said, referring to the items of tools and implements which were set down, I think, at about $1100, and said, ' I shall not want them. You may have them.' There may have been some remarks made about the schedule, and then he said, ' Why, there is enough here to pay off the note to the creditors and pay our claim in full, and then leave you four or five hundred dollars.' I said, ' Yes, and more.' He said, 'I will take it.' I do not know whether it was at that interview or not, but in connection with it he said to father, ' Now I want you to go to work and work this out. I shall expect you to get me the note, and want you to go right on and work out this amount to the best of your ability.' "

The plaintiff and his son further testified that, at the interview of June 11, nothing was said about wages, and that some few days after, upon inquiry of the defendant as to what they should do about their living expenses, were told by him to draw them out of the business.

The plaintiff testified that frequently thereafter the defendant told him that all there was in the business after paying the note belonged to the plaintiff, and that the defendant had no interest except to help him.

It further appeared in evidence, that the plaintiff continued the business from June 11, under the name of A. H. Herring, agent, in that name buying and selling goods, collecting and paying out money, and depositing money in the bank and drawing the same out.

The defendant, however, had given his credit to the business; and purchases, though made in the name of A. H. Herring, agent,

were made on the defendant's credit. These purchases, however, were largely from Amos W. Downing and Company. Between June 11, 1883, and January 1, 1884, the plaintiff drew out of the business, for his living expenses, at irregular times, and in irregular amounts, $377.

The defendant testified that, after a conference with his brother, Amos W. Downing, he agreed to buy the assets of A. H. Herring and Son, for a sum equal to forty per cent of their indebtedness; that the plaintiff said that he would work for just simply a living out of it; that he asked the plaintiff, "How much will that living cost you?" and the plaintiff said that he could live for nine dollars a week, and would.

On September 13, 1883, A. H. Herring and Son filed their petition in insolvency, and were duly adjudicated insolvent debtors on October 16, 1883. At the first meeting of their creditors, Amos W. Downing was appointed assignee of their joint and separate estates. On May 6, 1884, they received their certificates of discharge. Upon the election of the assignee, the note was delivered to him.

The plaintiff never called the attention of his assignee to the claim made in this action, did not insert it in his schedule of assets, and never conversed about the subject with the assignee. At the time of the sale of the stock to the defendant, the creditors knew and approved of the transaction, but there was no evidence that they knew of the alleged contract which was the foundation of this action. Amos W. Downing lived in Haverhill, was a witness at the hearing of this case before an auditor, and was present at the trial in the Superior Court.

The plaintiff also testified that, shortly before January 1, 1884, the defendant proposed to the plaintiff that one Cram, who was related to the defendant's wife, should put some money into the business, and have an interest therein; that the plaintiff assented to the suggestion, and thereupon, on January 1, 1884, an account of stock was taken. The account of stock showed that there was sufficient in the business to pay the note for the benefit of the creditors, and leave $3740 in the business; but this account only showed $390 in money. Cram became a partner in the business, which was thereafter carried on by the plaintiff and Cram, under the name of Downing and Cram. The plaintiff

testified that the defendant told him that the $3000, which was credited to the defendant as capital, belonged to the plaintiff, but that he (the plaintiff) could not appear in the business, because he had not obtained his discharge in insolvency. On the ledger of Downing and Cram, Downing was credited with $3000, and Cram was credited with $1500. The plaintiff was debited with the sums, irregular in time and amount, by him drawn out, amounting in all, between January 1, 1884, and July 22, 1884, to $477.46. Cram was debited in the same way with $385. No other personal account appeared in the ledger or books of Downing and Cram.

The plaintiff testified that the amount of $3000, which was left in said business on January 1, 1884, was arrived at by giving the defendant, at his request, a check for $290.20, and by setting aside $450 for the plaintiff to use for personal expenses. The defendant denied that there was anything said about setting aside any money for the plaintiff's use, nor did the defendant testify that there was at any time any arrangement as to the plaintiff's compensation, other than that which the defendant testified to as occurring on June 11, 1883.

Before July, 1884, the note was paid in full to the assignee, to whom it had been delivered. In July, 1884, the defendant, under circumstances which were in dispute, sold the assets to Cram, the value of the same at the time being sufficient to pay the claim of Amos W. Downing and Company in full, and leave a balance of $1316.31. This balance the defendant has retained.

The case went to the jury on the first and third counts only. The defendant asked the judge to rule that, upon this evidence, the action could not be maintained, because the right of action had vested in the assignee.

The judge refused so to rule, and instructed the jury that the action might be maintained with the assent of the assignee, and that it was competent for the jury to find such assent from the assignee's knowledge of the pendency of the suit, his non-interference with it, and his attendance at the hearing before the auditor, and at the trial in the Superior Court.

The defendant also asked the judge to rule that there was no evidence for the jury on the third count, and to direct them to

return a verdict for the defendant on that count; and also asked for a general ruling, that, on the evidence, the action could not be maintained. The judge refused so to rule.

The case was submitted to the jury under instructions, which were not excepted to, except as hereinbefore stated, and they returned a verdict for the defendant on the first count, and for the plaintiff on the third count. The defendant alleged exceptions.

*W. H. Moody*, for the defendant.

*B. B. Jones*, for the plaintiff.

FIELD, J. The jury returned a verdict for the plaintiff upon the third count of the declaration only. The defendant asked rulings, which were refused, that, upon the evidence, the action could not be maintained, because the right of action had vested in the plaintiff's assignee in insolvency; that there was no evidence for the jury on the third count; and, generally, that, on the evidence, the action could not be maintained.

The date of the petition in insolvency of A. H. Herring and Son was September 13, 1883, and they were duly adjudicated insolvent debtors on October 16, 1883, and Amos W. Downing was appointed assignee. The alleged contract was made on or about June 11, 1883. Whether this contract was, at the time the assignment in insolvency took effect, such an executory contract for personal services that it did not pass to the assignee, need not be decided, because, if it was not, an action could be brought, in the name of the plaintiff, for a subsequent breach of it by the defendant, if the assignee assented, and there was abundant evidence that the assignee had assented to the plaintiff's maintaining the action in his own name. *Hallett* v. *Fowler*, 10 Allen, 36. *Gay* v. *Kingsley*, 11 Allen, 345. *Mayhew* v. *Pentecost*, 129 Mass. 332. *Squire* v. *Lincoln*, 137 Mass. 399. *Powers* v. *Raymond*, 137 Mass. 483.

There was evidence for the jury, that the parties entered into the agreement set out in the third count. The plaintiff testified that the defendant "said he would take the bill of sale, and give his note for that amount, and then said that we might go on as before, and continue to manufacture, and raise the amount of the indebtedness, the forty per cent; and that, if there should be anything over, after paying that, it should be mine." There

was other evidence, that, in addition to the payment of the note given by the defendant, which was in amount forty per cent of the whole indebtedness of A. H. Herring and Son, it was agreed that the plaintiff should pay in full the claim of Amos H. Downing and Company against A. H. Herring and Son.

The whole consideration of this agreement, as proved, is not set out in the third count; but, as we construe the exceptions, this objection was not taken. If it had been, the defect could have been cured by an amendment. There was evidence of the promise or agreement declared on, and that this promise or agreement was founded upon a sufficient consideration, a part of which is properly described in the declaration.

*Exceptions overruled.*