JOSEPH BERNARD & another *vs.* BARNEY MYROLEUM
COMPANY & another.

Suffolk.    March 27, 28, 1888. — September 4, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Assignment in Fraud of Creditors — Equity Jurisdiction — Bill by single
Creditor.*

A corporation executed to a creditor, who held its notes as security for advances,
an assignment of its property, the object of which was, not to secure that debt
or to raise money for the payment of its other debts, but to prevent the attach-
ment of the property by other creditors and to secure its continued use in the
business. *Held,* that a finding was authorized, if not required as matter of law,
that the intent of the parties to the assignment was to hinder, delay, and de-
fraud the corporation creditors.

A single creditor may, under the Pub. Sts. c. 151, § 3, maintain a bill in equity to
reach and apply in payment of his debt the property of a debtor fraudulently
conveyed by him with intent to defeat, delay, or defraud his creditors, in lieu
of an attachment and execution in an action at law.

BILL IN EQUITY, under the Pub. Sts. c. 151, § 3, filed October
8, 1887, to set aside an assignment executed by the first-named
defendant to the other defendant, Gilbert N. Hall, as in fraud of
creditors. Hearing before *C. Allen,* J., who found, if competent
to do so upon the facts in evidence, that the assignment was
made with the intent to hinder, delay, and defraud the creditors
of the company, and especially the plaintiffs, and that the other
defendant was chargeable with knowledge of such fraudulent
intention, and reported the case for the consideration of the
full court. The facts appear in the opinion.

*H. G. Nichols & C. K. Cobb,* for the plaintiffs.

*E. R. Champlin,* (*J. H. Wigmore* with him,) for the defendants.

W. ALLEN, J. The first question presented is, whether it
was competent for the justice who heard the case to find, upon
the facts reported, that the assignment was made with the intent
to hinder, delay, and defraud creditors of the company. It may
be assumed that Gilbert N. Hall, the assignee, was a creditor
of the company, and that the ostensible purpose of the assign-
ment was to secure payment to him, and that the company had
a right to give a preference to him over other creditors, and

that the detriment to other creditors resulting from the prefer-
ence was not fraudulent, nor evidence of fraud, as to them.    A
creditor receiving a conveyance in preference to other creditors
stands in no better position than a purchaser for value ; and in
either case the question is whether one purpose of the convey-
ance is to hinder, delay, and defraud creditors.    The distinction
made by Chief Justice Bigelow in *Banfield* v. *Whipple*, 14 Allen,
13, is enough for the present case ; he says : " The distinction
is between a transfer of property made solely by way of pref-
erence of one creditor over others, which is legal, and a similar
transfer made with a design to secure some benefit or advantage
therefrom to the debtor, which is fraudulent and illegal."    See
also *Giddings* v. *Sears*, 115 Mass. 505.

The material facts bearing on the intent and purpose of the
assignment can be briefly stated.    Charles H. Hall owned one
half of the stock of the company, and was its president, treas-
urer, and manager ; he lent money to the company, which he
borrowed for the purpose from his brother, Gilbert N. Hall, and
for which he gave partial security upon his own property.    The
company subsequently voted to give its notes to Charles H. Hall,
" or to whom he may desire," to cover said money lent by him
to the company, and Charles H. executed notes of the company
payable to the order of Gilbert N. for the amount, which notes
constitute the debt due to Gilbert N., to secure which the assign-
ment in question was made.    Charles H. acted for Gilbert N.
in the matter, under full authority, and having the entire man-
agement of the matter.    Charles H. retained the notes in his
possession until the assignment, and no entry of them was made
in the books of the company.    The assignment was made on
September 21, 1887.    The plaintiffs had been selling goods to
the company for more than two years prior to August, 1887,
and for a year before that time the company had been unable
to meet its notes at maturity, and had been assisted by the
plaintiffs by advances in cash to pay its notes.    On the 23d of
August, 1887, the company showed a statement of its condition
to the plaintiffs, and negotiations continued between the parties
until the assignment, in regard to the terms upon which the
plaintiffs would grant an extension of the time of payment of
their debt and give further credit to the company.    At least as

early as the 17th of September, four days before the assignment, the company had given up any intention to make an arrangement with the plaintiffs, and the assignment to Gilbert N. Hall had been determined on; but the pretence of negotiations with the plaintiffs was kept up, and letters and telegrams were sent to them for the purpose of deceiving them and preventing them from taking legal measures to collect their debt. On the 19th of September, a suit was commenced by direction of Charles H. Hall on the notes to Gilbert N., on which all the property of the company was attached, and on the 21st of September, at a meeting of the directors at which Charles H. Hall and one other director, Gilbert N. Hall, and one other person, who was counsel for the company as well as the counsel of Charles H., were present, the assignment which had been prepared under the direction of Charles H. was adopted, and together with the notes was delivered to Gilbert N.

In the assignment, there are provisions for carrying on the business, extracts from which are as follows: "The party of the second part may in his discretion carry on in the name of the party of the first part, or otherwise, the business as carried on by the party of the first part, with a view to the gradual winding up of the same instead of immediately selling the same, and for the purpose of such carrying on and winding up he may employ or authorize the employment of any of the agents of the party of the first part as manager or managers of said business. . . . And it is agreed and declared that, for the purpose of carrying on as aforesaid the said business, it shall be lawful for the party of the second part from time to time, at the expense of the estate hereby transferred, to procure, by purchase, lien, or otherwise, such stock in trade, fixtures, materials, chattels, and articles as he shall think fit." Gilbert N. Hall took formal possession of the property, but left it in charge of Charles H. Hall as his agent, who continued to carry on the business until the filing of the bill in this case.

Not taking into account facts stated in the report, and perhaps some before adverted to, which are equally consistent with an intent to prefer Gilbert N. Hall and an intent to secure the continuance of the business, it appears that Charles H. was a creditor of the company for the amount which was secured by

the notes to Gilbert N. ; that Charles H. acted for the company, and also acted for Gilbert N. ; that his interest personally, and as the representative of the company and of Gilbert N., was that the property of the company should not be sold to pay its creditors, whether himself, Gilbert N., or the plaintiffs, but should be continued in the business; that his object, and the object of the company in the negotiations with the plaintiffs, was to prevent the property of the company from being taken to pay its debts, and to secure its continued use in the business ; that the attachment was made by Charles H., not to secure the debt to Gilbert N., but to prevent the attachment of the property by the plaintiffs before the intended assignment could be perfected ; and that the purpose of the assignment was to prevent the property from being attached by the plaintiffs, and to continue its use in the business.   The evidence was clearly competent to prove these facts, and to authorize, if it did not in law require, the finding, that the intent of both parties to the assignment was to hinder, delay, and defraud creditors of the company.   See *Dunham* v. *Waterman*, 17 N. Y. 1 ; *Jones* v. *Syer*, 52 Md. 211 ; *Gardner* v. *Commercial Bank*, 95 Ill. 298 ; *Spencer* v. *Slater*, 4 Q. B. D. 13.

The Pub. Sts. c. 151, § 3, give jurisdiction in equity to reach, and apply in payment of a debt, any property of a debtor liable to be attached or taken on execution in a suit at law against him, and fraudulently conveyed by him with intent to defeat, delay, or defraud his creditors.   This provision was first enacted in the St. of 1875, c. 235.   Before that statute, a creditor could reach property of his debtor, fraudulently conveyed, by attachment and execution in an action at law.   The statute gave him a concurrent remedy in equity to enforce the same right.   A bill under the statute is not a creditor's bill, or primarily a bill to reach property which cannot be come at to be attached or taken on execution, but a bill to enforce the right of a creditor to take property of his debtor on execution.   The bill is brought by a single creditor in his own behalf, and under the decree the property will be applied to his debt.   *Powers* v. *Raymond*, 137 Mass. 483.   *Squire* v. *Lincoln*, 137 Mass. 399.   *Trow* v. *Lovett*, 122 Mass. 571.   *Giddings* v. *Sears*, 115 Mass. 505, 508.

*Decree for the plaintiffs.*