SAMUEL N. HALL, *Appellee,* v. THE KANSAS CITY, LAW-
RENCE & TOPEKA ELECTRIC RAILROAD COMPANY, *Ap-
pellant.*

No. 17,985.

SYLLABUS BY THE COURT.

1. CONDEMNATION PROCEEDINGS — *Damages* — *Market Value of
Land—Evidence.* On appeal from an award of damages for
land taken for a right of way, a witness who had dealt in
land in the general vicinity and had seen and examined the
land in question was permitted to give his opinion touching
its value, although stating that he was not acquainted with
the market value of land in the immediate vicinity. Held not
materially prejudicial.

2. ———— *Rental Value of Land Immaterial.* In such case when
numerous witnesses testify as to their knowledge of the land
and its value it is not material error to reject evidence of-
fered by the defendant as to its rental value.

3. ———— *Character of Surrounding Improvements Immaterial.*
When witnesses for both parties testify as to their acquaint-
ance with the land and as to its value before and after the
appropriation of the right of way, it is not error to reject
evidence in chief as to the character of surrounding improve-
ments offered for the purpose of showing that the condemna-
tion did not in fact damage the land not taken.

Appeal from Johnson district court. Opinion filed
March 8, 1913. Affirmed.

*Charles C. Hoge,* of Olathe, for the appellant.
*J. W. Parker,* of Olathe, for the appellee.

The opinion of the court was delivered by

WEST, J.: The railroad took one and twenty-three
hundredths acres of plaintiff's sixty-two acres of farm-
ing land in Johnson county, and the county commis-
sioners, acting as appraisers, fixed the value of the
land taken at $93.75 and damage to the land not taken
at $40. The plaintiff appealed. The jury found the
value of the land taken to be $92.25, the damage to the

remainder $310, making $402.25, for which judgment was rendered, and defendant appeals.

Complaint is made that one of plaintiff's witnesses, who admitted that he was not acquainted with market value of the land in the immediate neighborhood, was permitted to testify. He stated, however, that he had handled land in almost all directions from Kansas City within twenty-five miles, and that the land in question was eleven or twelve miles out; that he was acquainted with the market value of land within a range of fifteen or twenty miles southwest from Kansas City and that he thought he knew the value of it; that the land before the road was built was worth from $125 to $140 an acre. He described the land in question, which he had seen and examined. Numerous other witnesses, about whose competency there is no question, placed it variously at $100, $95, $75, $80, $110 and $115. The witness complained of placed the value, after building the road, at from $78 to $80 per acre, and numerous competent witnesses placed it variously at $95, $87, $75, $90, $70 and $95 an acre. There was abundant competent testimony, therefore, to support the verdict, and we think the evidence complained of was not materially prejudicial, its weight being for the jury.

The defendant sought to prove the rental value of the land and complains because it was not permitted to do so. Such evidence is competent when it is the best that can be had, and its reception would not have been error. (*Kelchner v. Kansas City*, 86 Kan. 762, 121 Pac. 915.) But in view of the knowledge shown by the witnesses of the value of the land itself the exclusion of its rental value was not materially prejudicial.

It was sought, also, to show the effect of various improvements aside from those caused by the road upon the land in question, to which objections were sustained. It is argued that some of these improvements were made by those associated in a manner with

the building of the railroad but not directly interested therein, and for that reason the land was worth more on the open market after the location of the railroad than before. It is said that the constitutional provision that compensation must be made irrespective of any benefit from any improvement proposed by the corporation (Const. art. 12, § 4) seems harsh and unjust in this advanced age. Nevertheless it is still the constitution and we are bound thereby. It is argued that there would be no damage to the land not taken, unless after the location of the right of way it would sell for less on the open market than it would before. We must assume, however, that the witnesses who testified as to their knowledge of the land and its value before and after gave their best judgment as to its actual value, after considering the circumstances and surroundings aside from any supposed benefits from the railroad itself. The jury were the judges of the facts and the testimony supports their verdict.

The judgment is affirmed.