No. 28,339.

HUGH GRESTY, *Appellee,* v. JAMES BRIGGS, *Appellant.*

(272 Pac. 178.)

Opinion filed December 8, 1928.

152

*John W. Davis* and *Russell L. Hazzard,* both of Greensburg, for the appellant.

*S. S. Alexander,* of Kingman, and *O. G. Underwood,* of Greensburg, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The plaintiff brought this action to recover for the conversion by the defendant of 136 head of cattle sold by defendant, and 52 head of excess cattle left on the ranch, and the excess feed thereon at the expiration of the lease. The defendant denied the allegations of the petition except as to the execution of the lease, and asked to recover for hay, feed and other items claimed by him, including recovery of one-half of pasture bill paid by defendant for pasture and feed for cattle belonging to both plaintiff and defendant. The court denied the demand of the defendant for a trial by jury, holding that it was an appropriate case for a reference. Subsequently, by agreement, it was tried to the court instead of a referee, and a jury was called by the court to answer certain questions in an advisory capacity. The court made findings and conclusions and rendered judgment for plaintiff, from which defendant appeals. Plaintiff filed a cross appeal as to the item of one-half the rent paid by defendant, which was allowed by the court.

Appellant assigns a number of errors in connection with the introduction of evidence and the refusal to set aside some of the findings and to grant a new trial, but the most important question presented in the appeal is the right of trial by jury.

This action is based upon what is often called a lease-stock farming contract. A copy of the contract is attached to the petition. It shows that the defendant owned and furnished a 1,200-acre ranch and 108 cows. The plaintiff was to do the farming, raise feed for the cattle and care for them for three years, and at the close of that period was to have one-half of the increase, and also was to leave on the place at the expiration of the lease the same amount of feed that was there when he took charge. It provided in detail about the sale of steers and other cattle during the term, leaving the matter of such sales to the owner. The period was later extended for another year, ending September 1, 1924.

The plaintiff's claim consisted of four items, one for one-half of the proceeds of 136 head of cattle sold by the defendant, another for one-half of 52 head of excess cattle left on the ranch, and the

other two for excess hay and feed left on the ranch at the termination of the lease. The defendant's cross petition contained nine items as claims against the plaintiff, one of which was for one-half of the pasture and feed bills paid by defendant for the cattle belonging to plaintiff and defendant, which item is the subject of the cross appeal here. Four of the nine items of defendant's claim were later withdrawn. So we have a case involving an accounting between these parties, with four items on one side and five on the other and covering a period of something more than four years, as some of the sales referred to were made after the expiration of the lease.

Our bill of rights (section 5) and statute (R. S. 60-2903) guarantee the right of trial by jury of issues of fact arising in actions for the recovery of money, unless jury trial is waived or a reference be ordered as provided by law. R. S. 60-2923 provides that the court may direct a reference "where the trial of an issue of fact shall require the examination of mutual accounts, or where the account is long and on one side only." It will be observed there are only two situations in which a case like this can be referred—one where there are mutual accounts and the other where the account is long and on one side only.

Both sides refer to the case of *Lapham v. Oil and Gas Co.,* 87 Kan. 65, 123 Pac. 863, where these matters received the careful consideration of our court. That was a suit for an attorney fee of $7,000 and to be reimbursed for 47 items of expense incurred for the client. The defense was a general denial as to any indebtedness, admitting the employment but stating payment had been made in full, then setting up 34 items of payment on account. It was there held that this was not a mutual account, but a long account and on one side only. The number of items do not wholly determine the length of the account, for sometimes the intricacy and complications of one item may require more time and effort than many small or disconnected items. "Long" is a comparative term, and, as far as that feature alone is concerned, even the nine items here involved might meet the requirement. But how about the account being on one side only? In the attorney-fee case the account consisted of the charges for fee and expenses. The defendant had no charges. All it had was cash payments, 34 in number. All these, if correct, should have been noted as credits on the account

of the attorney. Defendant claimed nothing from the attorney; all it wanted and needed as to these 34 items was credit·for them; so the court held it was an account on one side only. With the same line of reasoning it was held it could not be a mutual account. It was said on page 68:

"We construe the clause, 'or when the account is long and on one side only,' used as it is in contradistinction to 'mutual accounts,' as meaning an account in which there are charges by one party only against the other, and as not intended to exclude a long account of charges in favor of one party and credits of payments thereon by the other. If this is the correct interpretation it seems entirely immaterial whether the account is kept exclusively by one party or whether one keeps account of his charges and the other of his payments. In either case it is one account only, and if long will justify a reference under the statute.

"On the other hand, 'mutual accounts' arise where each party has rendered services or sold articles of property to the other with the express or implied understanding that their respective claims shall, upon settlement, be offset to the extent of the smaller claim. Nor in such case·is it material whether both or only one of the parties keep the accounts. The distinction lies in the nature of the transaction or transactions. (21 A. & E. Encycl. of L. 246.) The more usual definition of 'mutual accounts' is a reciprocity of dealing, charges and credits on both sides—each party having a cause of action against the other."

We think this distinction can be illustrated by the instance of a merchant selling groceries on account to a city customer who pays in cash or by check from time to time. That would be an account on one side only. But where he sold groceries to a farmer, who, in addition to payment of cash and by check, sold to the merchant from time to time on account butter, eggs and poultry,· that would be a mutual account, and each party would have a right of action against the other. We need to consider but one only of the nine items or claims of the defense in the instant case to bring this case under the definition of mutual accounts as stated in the case above cited, and that item is the claim for one-half of the payment made by the defendant for outside pasture and feed for the cattle owned by both of them. Had no action been commenced by plaintiff this defendant had a good cause of action to recover this rent money advanced by him. These matters are to be determined by the pleadings rather than by the evidence, and the pleadings in this case undoubtedly show the issues of fact to be upon mutual accounts and therefore make the case a proper one for reference.

A number of other cases are cited by both parties, but they do not change or modify the definitions given or the rule expressed in the Lapham case. We find no error in denying defendant's demand for trial by jury and sustaining the application to refer it.

Appellant urges as errors four rulings of the trial court as to the introduction of evidence. First, in permitting the plaintiff to introduce evidence to the effect that the defendant had, during the period covered by the lease, sold 28 of the original stock cows and had kept the proceeds, which was his privilege under the contract; but by the terms of the contract the original number of 108 was to be reduced by that number in determining the number to be left on the ranch by the plaintiff, i. e., if he sold 28 plaintiff should leave 80 instead of 108. Appellant contends the allegations as to the sale of the 28 head are inconsistent with the admission in the preceding paragraph of the petition where it was said, in speaking of the increase, that all the sales during the term of the lease had been accounted for as far as plaintiff knew. A careful reading of the petition permits of no doubt that the pleader was speaking of the increase in one paragraph and of the original cows in the other.

Second, the appellant thinks the witness Winkler was incompetent to testify as to the value of two- and three-year-old heifers. The witness had been a farmer all his life, had not handled cattle recently, had not had a lot of experience, and had not seen any sold for some years, but read the market reports and knew approximately the market value. Under the authority of *Hall v. Electric Railroad Co.*, 89 Kan. 70, 130 Pac. 664, and *Bank v. Bank*, 111 Kan. 682, 208 Pac. 636, we think the evidence was not prejudicial to the defendant and could properly go to the jury for what it was worth. To have a knowledge of the market value of live stock does not require any special training or long experience; neither is this witness disqualified, as was the one in the case of *L. & W. Rld. Co. v. Ross*, 40 Kan. 598, 20 Pac. 197, by not living in the neighborhood of the land on which he was placing a value, and not knowing its situation and fertility.

The third objection was to the introduction of a copy of the *Drovers Telegram* to give the market value of corn, kafir corn, and milo at Kansas City, Mo., the crops in question being valued as of September 1 in an immature condition on land in Kiowa county, Kansas. If this had been the only evidence introduced

on the subject the objection would have been of more force, but there was other evidence as to the estimated yield or prospect of crop and the freight rate between Greensburg and Kansas City, Mo. It was said in *Nelson v. Railroad Co.*, 116 Kan. 35, syl. ¶ 4, 225 Pac. 1065, that—

"Market reports contained in familiar periodical publications are admissible in evidence for whatever they may be worth."

See, also, *Evans v. Moseley*, 84 Kan. 322, 114 Pac. 374.

Witness Alls, called by defendant, testified about plaintiff paying money to the bank of which he was president for the account of defendant, having seen both parties in the bank talking settlement. This was introduced to show that defendant had settled with plaintiff for the 28 cows sold out of the original herd. The court concluded it had no bearing on that subject and sustained the motion of plaintiff to withdraw it from the jury. We see no error in so doing.

The court overruled the motions of the defendant to set aside a number of findings made by the jury and by the court, particularly as to the amount of rent paid for outside pasture and feed for the cattle, and concerning the sale of the 28 head of cattle. There appears to be some slight confusion as to the exact amount of the rent paid, and the court followed the finding of the jury. There also appears to be evidence to support the finding as to the 28 head of cattle sold, when the one that died and the two that were otherwise disposed of are taken into account.

The appellee insists in his cross petition that the trial court erred in sustaining the finding in favor of the defendant for one-half of the rent paid by defendant for outside pasture, saying the terms of the contract limited the liability of the plaintiff to growing the feed and caring for the cattle, and the defendant, as owner of the ranch, should have furnished the additional pasture if such was needed. The liability of the defendant is also limited by the terms of the contract, and he was to furnish 1,200 acres for farm and pasture. The contract imposed no liability on either to furnish such outside or additional pasture. The cattle were pastured in the outside pasture with the knowledge of both parties. They belonged to both. Plaintiff should not claim and receive the benefit of the growth of such cattle as the result of such outside pasture without meeting his share of the reasonable and customary charges for

the same, when he knew the defendant was not required to furnish it under the contract.

We find no reversible error in the case under the assignments of error in the appeal or in the cross appeal.

The judgment is affirmed.