No. 31,492

C. L. Kagey and Hal M. Black, doing business as Kagey & Black, *Appellees*, v. Fox West Coast Theatres Corporation and The Fox Kansas Theatres Company, *Appellants*.

(31 P. 2d 67.)

Opinion filed April 7, 1934.

*Arnold C. Todd, Julian E. Ralston, Ralph Gore, C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellants.

*L. M. Kagey,* of Wichita, for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to recover money for legal services. Judgment was for plaintiff. Defendant appeals.

The action was started October 19, 1932, by a firm of lawyers against Fox West Coast Theatres Corporation and Fox Kansas Theatres Company, a corporation. At the time of filing the petition a garnishment summons was issued, and funds of one of the defendants were tied up in a bank in Wichita. Within a few days defendants entered a special appearance and gave bond with the United States Fidelity and Guaranty Company as surety to release the garnishment funds.

On May 25, 1933, judgment was rendered in favor of the plaintiffs and against defendants. On May 26, 1933, a notice of appeal in the name of the two corporations was filed by counsel who had represented the defendants in the trial court. A motion to dismiss the appeal on the ground that it was not taken by any one who had the right to appeal is urged. On February 28, 1930, the defendant, Fox West Coast Theatres Corporation, was adjudged a bankrupt in the district court of the United States. On March 8, 1933, the Fox Rocky Mountain Theatre Company was adjudged a bankrupt. This company owned all the stock in the Fox Kansas Theatres Company. Trustees were appointed and took charge of the Fox West Coast Theatres, and a receiver was appointed and took charge of the Fox Rocky Mountain Theatre Company. It will be seen that at the time the appeal was taken in this case both defendants were in the bankruptcy court. On May 15, 1933, the trustees for the Fox West Coast Theatres Corporation passed the following resolution:

"The question of defending the action of *Kagey & Black v. Fox West Coast Theatres* was discussed, and due to the fact that the expense of defending the same would more than compensate for the possible benefit, it was resolved that the defense of the case of *Kagey & Black v. Fox West Coast Theatres* be abandoned."

It also appears from an affidavit filed in this court by the counsel for the trustee in bankruptcy for the Fox Rocky Mountain Theatre Company, which company owned all the stock of the Fox Mid-West Theatres Corporation, which company owned all the stock of the Fox Kansas Theatres Company, that this trustee had complete charge and control of the Fox Kansas Theatres Company and that he had not on October 25, 1933, authorized any appeal to be taken in this case. Appellee argues that it is the duty of the bankruptcy court to order whatever actions on the part of the trustee with reference to an appeal seem advisable. It is argued that the affidavits

referred to only reflect the personal desires of the trustees. Since the record does not show any action on the part of the court to discontinue this case, the appeal was properly taken.

The bankruptcy act provides, in part, as follows:

"(b) The court may order the trustee to enter his appearance and defend any pending suit against the bankrupt.

"(c) A trustee may, with the approval of the court, be permitted to prosecute as trustee any suit commenced by the bankrupt prior to the adjudication, with like force and effect as though it had been commenced by him.

"(d) Suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed. (July 1, 1898, c. 541, sec. 11, 30 Stat. 549.)" (U. S. C. A., Title 11, Bankruptcy, p. 381.)

In *Carroll v. Hannon,* 288 Pa. St. 320, this section was considered. In that case the defendant filed his appeal after he had been adjudged bankrupt. In discussing a motion to dismiss the appeal the court considered the question of whether the trustee had authority to go ahead with the appeal. The court held that it was not necessary for the trustee to obtain this authority from the bankruptcy court, but said further:

"Moreover, in this case, the right of the bankrupt to prosecute the appeal in his own name is not gone. The adjudication of bankruptcy does not necessarily abate pending suits against a bankrupt in state courts. (*In re Vadner,* 259 Fed. 614, 636, 637.) Of course, where the bankrupt has received a discharge which is a bar to the claim against him, he has no further interest, and any right of appeal is exclusively in the trustee. (*Knox v. Exchange Bank,* 12 Wall. 379, 382, 20 L. Ed. 414.) True, in *Herndon v. Howard,* 9 Wall. 664, 19 L. Ed. 809, it was held that the proper procedure was for the assignee (trustee under the present act) to be substituted, but what was said in that case must be taken in connection with the matter there under consideration, which was an application by the assignee to be substituted. The true rule appears to be that an appeal may be prosecuted in the name of the bankrupt after adjudication, but before his discharge. (*Thatcher v. Rockwell,* 105 U. S. 467, 469, 26 L. Ed. 949; *Sanford v. Sanford,* 58 N. Y. 67, 17 Am. Rep. 206. See, also, *Hill v. Harding,* 131 U. S. [Appendix] cc, 26 L. Ed. 310; *Stockwell v. Silloway,* 100 Mass. 287; *Roberts v. Fogg,* 244 Mass. 310, 138 N. E. 333; *Schoonmaker v. Pittsburg Contracting Co.,* 176 App. Div. 48, 161 N. Y. Supp. 186.)"

This is the rule laid down in 7 C. J. 147. There it is said:

"It is not the absolute duty of the trustee to assume the prosecution or defense of pending actions by or against the bankrupt, but he may decline to do so if he deems that such course is for the best interest of the estate, and in such case the action may proceed unaffected by the adjudication of bankruptcy."

This statement in the text is supported by *Heckscher v. Blanton,* 111 Va. 648. There the court said:

"Upon the failure of the trustee to apply to be substituted in place of the bankrupt, or to become a party to the suit, it seems that it may be prosecuted or defended by the bankrupt, whether the result of the litigation inures to his own benefit or the benefit of his creditors; and the trustee, although he does not become a party to the suit, will be bound by the judgment or decree entered in the cause. See 1 Remington on Bankruptcy, sections 1640, 1644; *Griffin v. Mut. Life Ins. Co.,* 11 Am. Bankrupt Rep. 622, 623, 119 Ga. 664, 46 S. E. 870; *Herring v. Downing,* 146 Mass. 10, 15 N. E. 116; *Thatcher v. Rockwell,* 105 U. S. 469, 470, 46 L. Ed. 949; *Brown v. Wygant,* 163 U. S. 623, 624, 41 L. Ed. 284, 16 Sup. Ct. 1159; *First National Bank of Sacksboro v. Lassiter,* 196 U. S. 115, 119, 25 Sup. Ct. 206." (p. 661.)

We are aware that these authorities are in conflict with the holding of the court in *Drew et al. v. Ft. Payne Co.,* 186 Ala. 285, but the better reasoning and greater weight of authority sustains the holding that the bankrupt has the right to appeal. We have, therefore, concluded that the motion of appellee to dismiss the appeal should be denied.

The defendants in this case were, during the year 1931, engaged in operating moving-picture theaters in Kansas. There is no doubt about the employment of plaintiffs to transact legal business for defendants.

The business for which plaintiffs were employed was to bring suit and obtain an order of the federal court restraining the attorney-general and the various county and municipal peace officers from interfering with the operation of the theaters owned by defendants.

Plaintiffs filed their actions in the district court to recover a balance of attorney's fees and expenses in the amount of $2,649.65. It was alleged that a reasonable fee would be $8,000. An answer was due November 18, 1932, and when no answer was filed judgment was taken by default on the 19th. Later a motion to vacate this judgment was filed. An answer was filed the same day. Plaintiffs consented that the judgment be vacated and agreed to file an amended petition setting out in detail the nature of the charges rendered.

Later an amended petition was filed and an amended answer was filed. The original petition was similar to the amended petition except that the amended petition was more detailed and the statement of the account more fully itemized. The amended answer was largely the same as the original answer. The amended pleadings did not change the issues in any respect. After the hearing wherein

the plaintiff consented to the vacating of the default judgment and agreed to file an amended petition, but before the filing of these pleadings, the court made an order referring the case to a referee. This order was made at the request of plaintiffs and after a hearing. The defendants objected to the order of reference. When the case came on to be heard before the referee the objection was renewed.

The referee proceeded to hear the case. He made a report to the court in which he found generally for plaintiffs. Judgment was rendered in accordance therewith. Defendants appeal. Defendants urge as error that the action was not one which could be referred and that the action of the court in referring it to a referee deprived defendants of the right of trial by a jury, in violation of article 5 of the bill of rights of the constitution of the state of Kansas, and that the contract pleaded in the petition upon which judgment was rendered is illegal and against public policy.

The section of the statutes which authorizes a reference is R. S. 60-2923. It is as follows:

"When the parties do not consent, the court or judge may, upon the application of either, or of its own motion, direct a reference in either of the following cases:

"First. Where the trial of an issue of fact shall require the examination of mutual accounts, or when the account is long and on one side only, in which case the referee may be directed to hear and report upon the whole issue, or upon any specific question of fact involved therein."

This question was considered in *Lapham v. Oil and Gas Co.*, 87 Kan. 65, 123 Pac. 863. This was an action for attorney fees and expenses. The court held in the first two paragraphs of the syllabus:

"At the commencement of this trial the court, by a motion to refer, was required to determine, over the objection of one party, whether the motion should be allowed or a jury trial awarded. *Held,* that the pleadings are determinative of the question, and that no error was committed in sustaining the motion to refer.

"The claim for services and the forty-seven items of expenses set forth in the petition, with proper credits of payments thereon, constitute one account only. The answer challenges the correctness of the charge for services and of the items of expenses therein, and sets forth thirty-four items of alleged payments, which, if correct, should have been included in the account. Held, that no mutual accounts were involved."

This case was followed in *Gresty v. Briggs*, 127 Kan. 151, 272 Pac. 178. There the court held:

"The question as to whether issues of fact in an action for the recovery of money are such as must, under our bill of rights (section 5) and statute (R. S.

60-2903), be submitted to a jury for trial or can be referred is to be determined from the pleadings in the case rather than the evidence." (Syl. ¶ 1.)

In the case at bar defendants asked that the petition of plaintiffs be made more definite. Defendants complied with the order of the court in this respect by setting out an account comprising thirty-one items. Defendants denied the correctness of this statement of account. Substantially the same allegations were in the petition and answer that were on file at the time the reference was made. The trial court was warranted in concluding, when the statements were made as to the number of items in the account, that this was a case that came under the provisions of R. S. 60-2923 and that an order of reference should be made. We see no reason to disturb the action of the court in that respect.

Defendants next-argue that the contract sued on was against public policy and void.

We will examine the allegations of the petition on this question. It has been seen that the defendants were in the business of operating moving-picture theaters in Kansas. The allegations of the petition as to the contract between plaintiffs and defendants are as follows:

"On or about the 29th day of July, 1931, the said Charles A. Buckley, as the agent of defendants, came to Wichita, Kansas, and at the office of the plaintiffs made and entered into a certain oral contract of employment with plaintiffs, whereby he engaged them as attorneys for said defendants to bring and prosecute an action in the United States district court of the state of Kansas against the attorney-general of Kansas and other officers of certain counties in Kansas to obtain an injunction so that the theaters of defendants in the state of Kansas might be permitted to show their films, and to keep their places of business open without interference from the officers of said state. At the time of said employment the said Charles A. Buckley stated to plaintiffs that the defendants would pay a retainer of $1,000, and if and when a temporary restraining order was obtained in the action to be filed, an additional sum of $1,500 would be paid upon fees. He also stated to the plaintiffs that if a temporary injunction was allowed, an additional retainer of $2,500 would be paid to plaintiffs upon their services for representing defendants in the United States circuit court of appeals if an appeal was taken. It was further stated by him, that in the event the motion-picture theaters owned by defendants were kept open seven days in the week in the state of Kansas for a long period of time, to wit, for a period of one year or more, regardless of the final outcome of the case, defendants would pay plaintiffs a reasonable attorney fee for all of their services in said action, and in any other actions or proceedings ancillary or relating thereto."

Defendants argue that this is plainly a contract to retain plaintiffs to enable defendants to violate the laws of the state which forbid labor on Sunday. They seek to bring this case under the rule of

*Bowman v. Phillips,* 41 Kan. 364, 21 Pac. 230, where the attorneys had been hired to defend some saloon keepers for all future violations of the law which they might commit.

We hold, however, that there is not the iniquity inherent in this contract that there was in the contract in that case. The contract set out must be read in connection with the other allegations of the petition with reference to what was actually done by plaintiffs. The contract contemplated the bringing of an action in federal court. This action was brought and an interlocutory injunction was secured. This order was appealed to the circuit court of appeals where it was reversed. The action was abandoned before the appeal could be taken to the supreme court of the United States. The contract pleaded was one where the amount of the fee depended to a certain extent on the outcome of the litigation. Under such circumstances it cannot be said that a contract to pay an attorney to bring an action in court to test the validity of a statute is such a contract that it will be held to be against public policy and therefore void. The object of the contemplated action was not to defend defendants for a contemplated violation of the law but to ascertain whether contemplated acts would be a violation.

The judgment of the trial court is affirmed.

THIELE, J., not participating.