## LEWIS v. LOPER.

### (Circuit Court, S. D. Ohio, W. D. February 3, 1893.)

#### No. 4,425.

1. PARTNERSHIP—DISSOLUTION AND ACCOUNTING—OPENING OF SETTLEMENTS.
   Semiannual settlements of partnership accounts, made prior to dissolution, and entered in part by the complaining partner into the firm books, from original memoranda in his handwriting, will not be opened without proof of fraud or mistake, where each partner had equal opportunity of knowledge.

2. SAME—ACQUIESCENCE IN CHARGES.
   After a lapse of 12 years it is too late to challenge charges and entries upon the firm books, which have remained unquestioned for that period.

3. SAME—EVIDENCE—PRESUMPTIONS.
   One partner, claiming that the profits in a firm dissolved 14 years previously were not credited to him, was at the time under a financial cloud, and his name did not appear, and the profits were credited to the other partner, who testified that he paid over the share. There had been a settlement of the accounts. *Held,* that the presumption arising from the acquiescence in the settlement and the long delay were sufficient to defeat the claim.

4. SAME—SHARING OF LOSSES.
   Losses by a firm in which the interest of the partners are equal must be borne equally, although the moneys advanced to form such partnership were paid by another firm, in which their interests were unequal.

5. SAME—CHARGES FOR INTEREST ON MONEY BORROWED.
   On the formation of a partnership one partner agreed to furnish all the capital of the firm, which was stipulated to be a certain sum. This money was so furnished, but afterwards the firm borrowed a large sum in addition, and for many years used it in the business. *Held,* that on a partnership accounting the other member was chargeable with his share of the moneys paid as interest on the amount borrowed.

6. SAME—BENEFITS ACCRUING TO ONE PARTNER.
   On a copartnership accounting one partner is entitled to credit himself with a firm debt transferred to him by his father, and charged against him as an advancement.

7. SAME—RIGHT OF LIQUIDATING PARTNER TO BORROW MONEY.
   Where a partnership is formed in Pennsylvania, the place of residence of the partners, and liquidation and dissolution are there conducted, the liquidating partner is entitled to credit for interest on money borrowed for liquidating purposes; the law of such state authorizing the borrowing of money for such purpose.

In Equity. Bill by Harold R. Lewis against George J. Weaver Loper for a copartnership accounting. Decree for plaintiff.

Ramsey, Maxwell & Ramsey, for complainant.
Adolph L. Brown and Healy & Brannon, for defendant.

SAGE, District Judge. It is averred in the bill that on the 1st of March, 1888, the complainant and defendant were, and since December 23, 1878, had been, engaged as partners under the firm name of Harold R. Lewis & Co. in the oil business, under a partnership agreement whereby each was to share equally in the profits

and to be liable for one half of the losses of said business. On March 1, 1888, they were also, and since November 25, 1887, had been, engaged as partners under the firm name of Lewis & Loper, in the manufacture of binder twine, rope, and other products connected with the general cordage business, under a partnership agreement whereby the complainant was entitled to five-eighths interest in the profits and liable for five eighths of the debts and losses, and the defendant to three-eighths interest in the profits and liable for three eighths of the debts and losses of said business. On March 1, 1888, the parties dissolved both of said partnerships, and agreed that the complainant should act as liquidating partner in the settlement of the business, and that the defendant should render him assistance as far as possible. All the assets of the partnership, excepting a small tract of land in Minnesota, of not much value, and not salable, belonging to the firm of Harold R. Lewis & Co., have been collected and sold, and all the debts have been paid or satisfied, except a claim hereinafter more particularly described, held by Samuel G. Lewis against each of said firms for money advanced by him to them. The bill sets forth that the defendant is indebted to the complainant in the sum of $46,364.77, with interest, and prays for an account, and for a decree for the balance due him.

The defendant answers that the partnership of Harold R. Lewis & Co. began about the middle of the year 1881,—at what exact date he is unable to state,—and avers that about December 23, 1878, he entered into partnership with the complainant in the oil business under the firm name of Harold R. Lewis, but that said firm was dissolved about the middle of the year 1880, and a new firm formed, composed of the complainant and the defendant and one S. F. Lewis, under the firm name of H. R. & S. F. Lewis, which firm was dissolved about the middle of the year 1881, and the firm of Harold R. Lewis & Co. formed, as above stated.

Defendant further answers that he has never seen a statement of the account upon which complainant claims that he is indebted to him in the sum of $46,364.77, but he is informed and believes that in arriving at said sum the complainant has charged the defendant with losses alleged to have been incurred by said firm formed about December 23, 1878, as above stated, and by said firm of H. R. & S. F. Lewis, formed about the middle of the year 1880, as above stated.

Defendant further answers that the contract of partnership between the complainant and defendant formed about December 23, 1878, and the contract of partnership between complainant and defendant and said S. F. Lewis, formed about the middle of the year 1880, were not in writing, and that more than six years have elapsed since the dissolution of both said firms, and that, therefore, any liability of complainant to defendant arising out of either of said partnerships is barred by the statute of limitations.

Further answering, the defendant says that by the contract of partnership aforesaid entered into December 23, 1878, and by the contract of partnership aforesaid entered into about the middle of 1880, between the complainant and defendant and said S. F.

Lewis, the complainant agreed to furnish all the necessary capital for the business of said firms, and that he failed to do so, by reason whereof said firms were obliged to borrow large sums of money, and to pay interest thereon, which interest defendant has good reason to believe, and does believe, has been included in the account upon which complainant claims said sum of $46,364.77 from defendant, all of which interest ought to be charged against the complainant.

The defendant further avers that a like contract to furnish all necessary capital was made by complainant in the contract of partnership formed about the middle of 1881, but that complainant failed to furnish the same, by reason whereof said firm was obliged to borrow large sums of money, and to pay interest thereon, which interest, also, defendant is informed and believes has been included in the account upon which complainant claims $46,364.77 from the defendant, whereas said interest ought to be charged against the complainant alone.

The defendant admits that on March 1, 1888, the complainant and defendant were, and since November 25, 1887, had been, partners under the firm name of Lewis & Loper, as stated in the bill, but avers that there were no losses of said firm during the time of its continuance, and that prior to the formation of said firm the complainant had, since July 2, 1885, been carrying on the same business for which said partnership was formed, and that on November 25, 1887, he owed a large amount of money, and interest thereon, borrowed by him in the conduct of said business since July 2, 1885, and that the contract of partnership between him and the defendant of November 25, 1887, contained a provision that the defendant should be entitled to three-eighths interest in the profits, after charging the business with all debts and losses incurred, and with interest on loans made for the purpose of establishing and carrying it on from its commencement, to wit, July 2, 1885, until the termination of the agreement, and should be liable for three eighths of the debts and losses, and the complainant should be entitled to the remaining five-eighths interest therein.

The defendant further avers that he is charged in the complainant's statement of account with three eighths of the debts and losses of said business incurred prior to November 25, 1887, whereas he was by said contract chargeable only with three eighths of the losses after November 25, 1887.

Further answering, the defendant says that the greater part of the debt incurred by complainant in the conduct of the business prior to November 25, 1887, was owing to Samuel G. Lewis, his father, and that before defendant entered said partnership the complainant, to induce him to make said contract, willfully and knowingly represented falsely to him that said Lewis had promised and agreed not to press the collection of the money due him, but to wait five years for the same, and that the defendant could safely make said contract with the expectation that the business of the firm would continue for five years; and that, relying upon said representations, he entered into said contract, which

was made by complainant for the purpose of endeavoring to unload upon him a part of the losses and debts previously incurred in said business.

He further avers that, although the partnership was formed November 25, 1887, to continue five years, said Samuel G. Lewis, in the month of February, 1888, demanded payment of the money due him as aforesaid, with interest, and insisted that the firm should be dissolved, and go into liquidation. Complainant thereupon notified defendant that the firm must be dissolved, to which the defendant objected, whereupon complainant informed him that said Samuel G. Lewis threatened to bring suit for his claim, and to apply for a receiver of the property of the partnership; and, the complainant still insisting upon a dissolution, defendant was by reason of the premises compelled to consent thereto, wherefore he claims that, even if by the terms of said contract he became liable for any part of the debts and losses incurred by complainant in the business prior to November 25, 1887, he is nevertheless not bound to pay any part thereof, because of said false representations of complainant, and the consequent dissolution of the partnership as above set forth.

Upon the complainant's motion, and by consent of the parties, a reference was made to a special master to state the account between the parties as shown by the books, and to take and report to the court the evidence in writing upon the issues, and also such evidence as either party might desire bearing upon the account. It is conceded that the master's report, which has been filed, states truly the account as it appears upon the books. The cause is now upon hearing upon the report and the evidence taken before the master. It appears from the books and the evidence that semi-annual settlements of the affairs of the firm of Harold R. Lewis & Co. and of the firm of Lewis & Loper were regularly made; the last prior to the dissolution having been made by defendant in June, 1887, during the absence of the complainant in Europe. The original memoranda for this settlement are produced in the defendant's handwriting. They were duly entered in the books, partly by the defendant and partly by the complainant after his return from Europe. So far as entered by the complainant, they were copied from the original pencil memoranda, in defendant's handwriting, which were produced in court. Under these circumstances, the rule relating to accounts stated applies, that they cannot be opened up without proof of fraud or mistake, and no evidence of either has been offered. The defendant had equal opportunities of knowledge, if there was any mistake; and, under the facts above stated, is not entitled to relief. Belt v. Mehen, 2 Cal. 159. There are two items, however, which do not fall within the rule above stated:

First. The Cincinnati mill was the property of Harold R. Lewis & Co., in which complainant and defendant were equal partners. William J. Munster, an examining accountant, called and examined as a witness on behalf of the defendant, testifies that subsequent to October 25, 1887, and as shown by the account on the books, the loss on the business of the Cincinnati mill was $39,-088.48. The complainant charged one half that loss to himself and

one half to defendant. The defendant insists that he should be charged with only three eighths of that loss, because the money and property covering it were advanced to Harold R. Lewis & Co. by Lewis & Loper, in which firm Loper had only a three-eighths interest. But it is admitted that the loss was made by the firm of Harold R. Lewis & Co., and it must therefore be treated as the loss of that firm, and borne by the partners equally, because their interests in the firm were equal.

Second. After the dissolution the complainant was obliged to borrow money for liquidating purposes, and to pay interest thereon, and it is contended for the defendant that no credit should be allowed to the complainant for that interest. But when each partnership was formed the complainant and defendant were residents of the state of Pennsylvania, and the contract of partnership was there made, and the liquidation after dissolution was there conducted, and it is the settled law of Pennsylvania that a liquidating partner in that state has the power to borrow money when necessary for the purpose of liquidation. Lloyd v. Thomas, 79 Pa. St. 68; Fulton v. Bank, 92 Pa. St. 112; Siegfried v. Ludwig, 102 Pa. St. 547.

Referring briefly to other objections to the accounts as shown in the books, which might be passed because adjusted in the semi-annual settlements, it is claimed that the defendant is entitled to a credit for the sum of $343.73, which was not entered in his favor upon the books of Harold R. Lewis & Co. That firm carried on business from December, 1878, to February; 1879. Its books were balanced, and its profits declared. It is in evidence that the defendant was then financially under a cloud, and therefore his name did not appear. Now, after 14 years, it is claimed that he was not credited with all his profits. To have credited him with profits would have shown that he was a partner, and for that reason the entire profits were credited to the complainant, who testifies that he paid over to the defendant his share. Independent of the presumption against this claim arising from the defendant's acquiescence in the settlement of the accounts and his long delay, the evidence adduced is not sufficient to establish it.

At one time it was necessary to make large advances to C. Lucien Jones, to enable him, as a factor, to buy resin to fill heavy contracts of H. R. & S. F. Lewis for a certain quality of resin which could only be obtained by purchasing lots which included other and less desirable grades, the resin of the grades not wanted being held by C. Lucien Jones, and subsequently sold for account of H. R. & S. F. Lewis. While they were so held, (and this was in 1879, more then 13 years ago,) the account of C. Lucien Jones necessarily stood debited with heavy balances. When the books were closed on the 31st of December, 1879, for the preceding six months, $3,500 was transferred from merchandise account to resin account. The entry shows that resin to the amount of $3,500 had therefore been charged to merchandise account, and in separating those accounts the entry above was duly made and posted. It remained unquestioned for 12 years, and it is now too late to challenge it.

From an early period money was borrowed by the firms from Samuel G. Lewis, and the amount credited to him, from time to time, on the firms' books. Interest was paid as it became due, and charged to expense account. The last payment of interest prior to the dissolution was made by the defendant, and the entry of its payment is in his own handwriting on the partnership books. The profit and loss statement for the last settlement prior to the dissolution, which includes interest paid to Samuel G. Lewis as an expense of the firm, is in the handwriting of the defendant. Harold R. Lewis, Frank Lewis, and Samuel G. Lewis himself testify to repeated acknowledgments by defendant of his obligation to Samuel G. Lewis for making the rate of interest only 5 per cent., and none of these conversations are contradicted by the defendant. The claim now made that this interest should have been charged to the complainant alone, upon the ground that the partnership agreement required him to advance the capital, is inadmissible. It is true that the complainant was to furnish the capital, but the testimony is clear that the amount to be furnished for the first firm was $3,000, and that in March, 1879, when Frank Lewis was taken in, it was agreed that the capital should be increased to $10,000, of which Frank Lewis should furnish $5,000, and the complainant $2,000 in addition to the $3,000 which he had already contributed. That capital was paid in according to the agreement, and the money subsequently borrowed from Samuel G. Lewis was entered upon the books as a loan from him, and interest thereon charged regularly for 13 years as an expense of the firm. Moreover, it is set forth in the answer that when the partnership contract of November 25, 1887, was made, defendant knew of the indebtedness to Samuel G. Lewis, and that he was induced to enter into that contract by the false representation made to him by the complainant that Samuel G. Lewis had agreed to extend the loan five years. The agreement of the complainant to furnish the capital was limited in terms to the amount above stated, and did not apply to larger sums required in the transaction of the business of the partnership. Had the agreement been to furnish the capital of the firm, even without stating a limit, it would not have bound the party making it to advance as capital any sum that might be required upon an emergency, or to enable the partnership to embark upon a venture, not in contemplation when the contract was made. The $10,000 contributed by the complainant and Frank Lewis was first credited to their joint accounts. When Frank Lewis retired, that account was closed, and one half of the $10,000 credited to his account, the other half to complainant's account. Frank Lewis was charged with his share of the losses, and the balance was paid to him upon his withdrawal. Complainant was charged with his share of the losses, his balance struck, and his account continued regularly on to the end of the partnership.

The defendant admits, and the written contracts of partnership confirm the admission, that the indebtedness of H. R. & S. F. Lewis to Samuel G. Lewis was assumed by Harold R. Lewis & Co. when Frank Lewis withdrew from the firm. The written contracts

so stipulate, and leave no ground upon which to sustain the plea of the statute of limitations. From time to time, beginning 12 years ago, transfers were made from complainant's account to Samuel G. Lewis' account, in order to equalize the accounts of complainant and of defendant. The complainant testifies that these transfers were arranged and agreed upon between him and the defendant. The entries have stood on the books, and the amounts were included in the balance upon which the defendant himself calculated and paid interest to Samuel G. Lewis during complainant's absence in Europe. The entries state on their face the purpose for which they were made, and they cannot now be disturbed or set aside. The claim set up in the answer that the defendant was induced by false and fraudulent representations to enter into the partnership agreement of Lewis & Loper in November, 1887, is not only unsupported by testimony, but it is disproved by the express admissions of the defendant himself. As to the dissolution, the cause, as it appears in the testimony, was that during the first two or three months of the firm's existence it incurred losses so heavy that to meet the extraordinary advances required threatened financial disaster to Samuel G. Lewis himself, and he was unwilling and refused to make them. Under these circumstances, the alternative for the firm was dissolution or insolvency, and the written agreement of dissolution by mutual consent is appended to the partnership agreement of each firm, and signed by the complainant and the defendant. There is nothing, therefore, in that defense.

The only remaining question relates to the rights of the complainant, under a transfer to him by his father, Samuel G. Lewis, of the claim which he held against the firm, and this will now be considered. The trial balance October 3, 1890, from the books of Lewis & Loper, as appears by Exhibit E in the record, shows that the indebtedness of that firm to Samuel G. Lewis on loan account was $15,803.56; and the trial balance of the same date from the books of Harold R. Lewis & Co. shows that the indebtedness of that firm to Samuel G. Lewis on loan account was $56,109.98. The complainant testified that these amounts were transferred to him by his father, and charged on his books as an advancement. The precise date of that transfer does not appear, but the complainant, in his deposition taken on the 17th of October, 1892, testified that it was a "year or so ago." He further testified that he paid nothing for it. The special master finds that the amount of the loan account to Samuel G. Lewis, including interest to October 3, 1890, on the books of Lewis & Loper, is $19,650.90, and upon the books of Harold R. Lewis & Co., with interest to the same date, $62,726.73. He also finds that the balance against the complainant on the books of Lewis & Loper was $4,873.05, and against the defendant $14,777.85, aggregating precisely the amount of the indebtedness of the firm to Samuel G. Lewis on loan account. He further finds that the balance on the books of Harold R. Lewis & Co. against the complainant was, on the 3d of October, 1890, $31,139.81, and against the defendant $31,586.92, aggregating $62,726.73, the

exact amount of the loan account of that firm in favor of Samuel G. Lewis.

The contention of counsel for the defendant is that the assignment to the complainant by Samuel G. Lewis of his claim above stated gave the complainant no right against the defendant for contribution at this time, for the reason that there must be an actual payment of a firm debt by one partner after dissolution before he can have contribution from the other.

The contention is, further, that the assignment of his claim by Samuel G. Lewis to the complainant inures to the benefit of the firms, and that every advantage or benefit obtained by complainant from that assignment must be shared with the defendant. The general rule applicable alike to partners, trustees, agents, and to all persons standing in a fiduciary relation, prohibits them from obtaining any private advantage at the expense of those whom they represent or for whom they act. In all transactions affecting a partnership every partner is bound to share with his copartners any benefit which he may have been able to obtain from others, and in which the firm is in honor and conscience entitled to participate. Lindl. Partn. p. *307, and cases cited. The same obligation exists before the partnership is actually formed between persons who have agreed to become partners, and it continues until complete liquidation. But the question here is whether the transaction between the complainant and his own father, whereby the father's claims against the two firms were given to the complainant as an advancement, falls within the rule. Was that a transaction in which the firms were in honor and conscience entitled to participate? If these claims had come to the complainant by inheritance before the dissolution, or pending the liquidation of the affairs of the partnerships after dissolution, it would hardly be contended that the inheritance inured to the benefit of the partnerships, or, in other words, that the claims were extinguished, for that would be the result. But an advancement is only giving a portion of the inheritance in anticipation, and involves no different principle. Counsel for the defendant urge that in this case it was not a gift because by the terms of the assignment the complainant was to be charged with it, so that charging it to him against his share of his father's estate was merely a substitution of his individual obligation, payable, without interest, at his father's death, for those of the firms; or, in other words, a postponement of the time of the payment of the debt, and a waiver of interest in the mean time. It is not a gift, they say, because, if it were, it could not, at the death of Samuel G. Lewis, be charged against the complainant as an advancement. The difficulty with this proposition is that it ignores the definition of an advancement, which is a gift by anticipation from a parent to a child of the whole or a part of what it is supposed such child will inherit on the death of the parent. 1 Bouv. p. 126. It does not, in any event, impose the slightest obligation upon the recipient. As a gift it is irrevocable. Upon the death of the parent, if he leave no estate for distribution, the gift by way of advancement is in no wise affected. If

there be an estate for distribution, the amount of the advancement is added to the amount of the estate to be distributed, and each heir receives his share of the total. In this way the child having received the advancement is charged with it. But, after all, he shares equally with his coheirs in the entire estate. So far, however, from the advancement costing him anything, he is even in that event the gainer, by having had the use of the amount without interest. It is stated by Lindley, on star page 325 of his treatise on Partnership, that if an advantage which has been obtained by a partner is wholly unconnected with the partnership affairs, or, being connected with them, has been conferred upon him with a view to his own personal benefit, he cannot be called upon to account for it to the partnership. The case of Campbell v. Mullett, 2 Swanst. 551, is in point. There a ship belonging to a Frenchman and two Americans as partners was captured by a British cruiser, and compensation was made to the Americans only, the Frenchman being expressly excluded, because he was an alien enemy to England, and it was held that the sum awarded to the Americans belonged to them alone, and that the Frenchman had no interest in it. Counsel for the defendant undertake to distinguish that case from the present by saying that the court drew a distinction between the case of property of a partnership seized and confiscated, and afterwards returned in whole or in part, (in which case it was conceded that the property would continue to belong to the firm,) and the case where property having been seized and condemned and sold or disposed of, certain amounts were afterwards allowed under a treaty for the interests of certain members of the partnership, excluding the other member; and call attention to the fact that the court said that by the seizure and confiscation of the property all interest of the firm had ceased, and no such firm property existed any longer, either for the benefit of the partners or the creditors of the firm. All this is correctly stated. But the property of the firm had been taken, and the claim for it survived, and the court was dealing with that claim, which took the place of the property; and the court held that the sums awarded by the commissioners were not a matter of right, but simply a bounty from England to American citizens, and that the commissioners had the power, final and absolute, to grant or refuse relief to any individual, and in any circumstances, as they might see fit. So it is here. In the intimate relation of a father to his son, bound one to the other by the closest tie of consanguinity, Samuel G. Lewis transferred his claim against the firm to the complainant, not merely as a gift, but also in part anticipation of his inheritance; and I am unable to see that the complainant was under the slightest obligation in honor or conscience to share this bounty with the defendant for the mere reason that he was his partner, and that the claims assigned were claims against the firms of which they were both members.

In Burnand v. Rodocanachi, L. R. 7 App. Cas. 333, the respondents were insured by valued policies on a cargo which was destroyed by the Alabama, a Confederate cruiser, and the underwriters paid to the

respondents, as on actual total loss, the valued amounts, which were less than the real value. The United States, out of a compensation fund created after the loss, and distributed under an act of congress passed subsequently to the loss, paid to the respondents the difference between their real total loss and the sum received from the underwriters. Under the act no claim was allowed for any loss for which compensation had been made by an insurer, but, if such compensation was not equal to the loss actually suffered, allowance might be made for the difference. The complainant sued on behalf of himself and all others the underwriters upon the policies issued to the respondents. The claim was that the insurers, having paid the total loss as agreed between them and the respondents, were subrogated to all their rights. The court below sustained the claim, but the decision was reversed on appeal. Lord Chancellor Selborne pointed out that the fallacy of the reasoning of the learned judges below was that they took the valuation of the policies as conclusive, and as operating by way of estoppel beyond the purposes of the contract of insurance; whereas, for purposes collateral to that contract, the insured could show that their loss was in fact greater than that which was covered by the policies. He then proceeded to express the opinion that the act of congress was an act of pure gift from the American government, which, having absolute power of disposition over the fund to which it applied, declared that it should be given, not in respect to the loss which had been indemnified as between the assurers and the assured, but in respect of the loss which the assured had suffered beyond that amount, and said that he was entirely unable, for any practical purpose, to distinguish the case from the case of a voluntary gift by an individual on the same terms. Referring to the admission in the argument that if a member of the family of the shipowner who had suffered the loss, or of the owner of the cargo, had, after the insurers had paid the loss, given by will a fund over which he had absolute control, for the purpose of indemnifying his relative for that portion of the loss not covered by the insurance, the insurers could not have claimed the gift, he said there was no distinction, in a legal sense, between such a case and the case before the court. Now, although the facts of that case differ from the facts in this case, the principle seems to me to be the same. In Insurance Co. v. Church, 21 Ohio St. 492, the application is made a little more closely. Church brought suit against the insurance company to recover compensation for his services as its agent. The company added to its answer a counterclaim that by the terms of the contract of agency it was entitled to his entire time, skill, and services, and that during the time of the agency the plaintiff had rendered services in insurance matters to other companies, for which he had been paid, and that he must account to the defendant for the amount so paid. The fact was, as it appeared in evidence, that Church had rendered no service directly to other insurance companies, but that they, having derived incidental benefits from services rendered by him to his own company, had paid to him, in token of their appreciation of those services, certain sums, aggregating $458.07. It was held that the sums so paid to and re-

ceived by the agent were not profits made by him in the course of the business of his agency for which he was accountable to his principal, but gratuities to which, had they been paid to the principal, the agent would have had no claim; nor could the principal call the agent to account because it was his good fortune to be the donee. The court said that such gratuities were not properly earnings or profits made by the agent in the course of the business of the principal, but were gifts, prompted by the liberality of the donors, and belonged to the donee. In like manner, in this case, the advancement to the complainant was made, not at all because of his relation to the partnership, but by reason of the relationship between him and the donor, and solely with a view to his own personal benefit. Cassels v. Stewart, L. R. 6 App. Cas. 64, is also strongly in point. Complainant and defendant were partners in a firm under articles containing a provision that upon the retirement of a partner the remaining partners should have power to buy his interest at the amount standing to his credit at the last balance. Reid, who was also a partner, transferred his interest to the defendant, his nephew, under an arrangement by which he in substance and effect made his nephew a present of some £25,000. The suit was brought to hold the defendant, as a trustee for the firm, for the interest so acquired. The court of sessions in Scotland, and the privy council on appeal, held that the suit could not be maintained. Lord Chancellor Selborne said, (page 75:)

"I apprehend, my lords, that you will, under these circumstances, hold that in this case there is no principle which justifies any claim on the part of the appellant to participate in the profits of this transaction. I can find no ground for saying that there is any breach of the duty of a partner in a transaction like this between an uncle and a nephew by way of bounty to a very great extent on the part of the uncle to the nephew,—a transaction involving no object or purpose against the good faith of the partnership agreement, and neither alleged nor proved to have had such an effect."

Upon principle, and upon the authority of the cases above cited, the complainant had the right to receive and hold for his own benefit the claims assigned to him by Samuel G. Lewis a year after all the affairs of the partnership had been settled. I am wholly unable to perceive on what the defendant's supposed equity rests. The propositions urged for the defendant that only the present value of the claims can, in any event, be allowed, and that contribution cannot be enforced until the consideration for the assignment is made, have no application. The assumption that the extent to which the complainant's share in the estate to be left by his father upon his death may be diminished by reason of the advancement is to be taken as a measure whereby to determine the cost to him of the advancement, grew out of the failure to recognize that the complainant took the advancement not by way of purchase but as a gift in anticipation of a portion of the inheritance, and that under no contingency can the question of cost or consideration arise; and hence the present value of the claim is precisely what it would be if the assignment had not been made. The only difference is that the defendant's liability is limited to his proportion of the indebtedness arising upon it. The decree will be, accordingly, for the complainant.