# Richmond.

## BLANTON, TRUSTEE, v. HECKSCHER AND OTHERS.

### December 11, 1902.

1. CHANCERY PRACTICE—*Payment of Money Into Court—When Ordered.*—
A court of chancery has no authority to compel a trustee, who de-
nies liability, to pay money into court before his responsibility for
the fund has been adjudicated. An order to pay money into court
may be made on interlocutory application where a fiduciary admits
liability in his answer, or on his examination, or where it appears
on a master's report unexcepted to, but not where he denies liability,
and the only evidence of it is *ex parte* affidavits.

Appeal from a decree of the Chancery Court of the city of
Richmond, pronounced July 16, 1901, in a suit in chancery,
wherein the appellee, A. Heckscher, suing on behalf of himself
and others, was the complainant, and the appellant was the
defendant.

                                         *Reversed.*

The opinion states the case.

*S. S. P. Patteson, Meredith & Cocke* and *R. L. Montague,*
for the appellant.

*Hill Montague,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The question involved in this appeal is as to the authority of
a chancery court to compel a trustee who denies liability to pay

money into court, before his responsibility for the fund has been adjudicated.

It appears that a syndicate composed of A. Heckscher, appellant, Joseph W. Blanton, appellee, and other creditors of the Virginia Pyrites Mining Company, purchased the real estate of that corporation, under an agreement that their interests therein should be in proportion to the amount of their respective demands.

For convenience, the property was conveyed to Joseph W. Blanton, trustee, for himself and the other members of the syndicate.

It was subsequently placed in the hands of real estate agents for sale, at an agreed commission of 10 *per cent.* of the purchase price, provided a sale of not less than $100,000 was effected. The property was sold for that price, and the selling agents were paid their commissions of $10,000, which they afterwards divided with Blanton, in consideration, as is alleged, of valuable assistance rendered them by him in consummating the sale.

Heckscher, who owned by far the largest interest in the property, upon learning of that transaction, filed a bill in the Chancery Court of the city of Richmond on behalf of himself and other members of the syndicate against Blanton, to require him to account for and refund to complainant his proportion of the $5,000 which he had received.

The bill charges a secret arrangement between Blanton and the selling agents by which the latter were to charge 10 *per cent.* commission for their services, and to divide the same with Blanton. Blanton, in his answer, admits the receipt of half the commission, but denies that before the sale there was any agreement or understanding whatsoever between himself and the agents for any part of their compensation. His statement in that connection is that some months after the contract of

sale had been executed, the real estate agents voluntarily presented him with half their commission in recognition of the services rendered by him in effecting the sale.

Pending the preparation of the cause for trial, G. Norris Shuman, another member of the syndicate, made affidavit that the $5,000 in controversy belonged to the syndicate; and, also, that since the institution of the suit, Blanton had disposed of his real estate, for the purpose of defeating any recovery that might be had against him.

In a counter affidavit, Blanton repeats the allegations of his answer in respect to his right to retain the $5,000. He admits the sale of his real estate, but insists that it was made in good faith for the purpose of paying debts; and he denies that he is insolvent.

The cause was heard upon the pleadings and affidavits, and a decree was entered, directing Blanton, within ten days, to deposit $5,000, with interest, in bank, to the credit of the court in the cause. The decree further provides that if Blanton should so elect he might, in lieu thereof, enter into bond, with security, in the penalty of $6,000, conditioned to pay and satisfy any decree which might be thereafter made against him. From that decree this appeal was allowed.

The general rule of chancery practice, as to the payment of money into court, is that, where a fiduciary admits in his answer, or on his examination, or where it appears on a master's report unexcepted to that he has in hand money belonging to the trust estate, such money may be ordered to be paid into court upon interlocutory application.

The cases of *Farmer* v. *Yates*, 23 Gratt. 145, and *Davis* v. *Chapman*, 83 Va. 67-74, 1 S. E. 472, 5 Am. St. Rep. 251, are illustrative of that practice, and are in accord with modern English precedents. See also *Wills* v. *Dunn*, 5 Gratt. 384: 2 Lomax on Executors (2d ed.), 769. Although a contrary rule

seems to have obtained formerly in this State. Thus in *Camp-bell* .v. *Braxton,* 4 Hen. & M. 446 (decided in the year 1809), it was held that where a report of a commissioner shows a balance due from an executor, it is not a sufficient ground for an order directing the money to be brought into court, but the plaintiff should be required to proceed to a decree, and enforce it in the usual way. But, as remarked, the doctrine laid down in that case is not in accord with the present practice.

The doctrine is thus stated by Mr. Daniel: "The plaintiff will not be allowed to make use of affidavits to supply any defect in the answer: the rule of the court being, that the order shall be made upon the defendant's admissions alone." 2 Daniel's Chy. Pl. & Pr. (5th ed.), 1781.

It is apparent, therefore, from the foregoing authorities, that the rule has no application where the defendant denies liability. In such case, the question of liability must be determined before an order will be made requiring a deposit of the fund. The principle that a litigant will not be compelled to pay that which he disclaims owing, until his responsibility has been adjudicated, lies at the very foundation of the administration of justice. A contrary practice would, in many instances, entail hardship and ruin upon suitors, the question of whose liability might be eventually determined in their favor.

The attachment statutes afford adequate remedies against debtors who undertake to escape liability, by converting or disposing of their property in advance of judgment, or decree, and, at the same time, safeguard the rights of the defendant. But if no such remedies were provided by statute, the practice resorted to in this cause would not receive the sanction of this court. The court is not to be understood, however, as intimating any opinion as to the ultimate merits of the controversy. The scope of the decision is to deny the power of the trial court to require the fund in litigation to be paid into court until after

the defendant's liability therefor has been ascertained and determined in the usual manner, but it extends no farther.

It follows from these views that the decree complained of is erroneous, and must be reversed and annulled.

*Reversed.*