GAY v. PAIGE.

PRINCIPAL AND AGENT — OBLIGATION OF AGENT — PROFITS OF AGENCY—DUTY TO ACCOUNT.

> Where the State agent of a life-insurance company employed a superintendent of agents whose duty was to assist subagents as directed by the State agent, and in the performance of that duty assisted a subagent who paid him an agreed sum in consideration of such services, the sums so paid were a profit of the agency, to be accounted for to the State agent; but if the sums paid were not given in recognition of any obligation to pay them, but out of gratitude for assistance as voluntary gifts, out of moneys belonging to the subagent alone, in which neither the State agent nor the superintendent had any interest, there was no such duty to account; and in an action at law involving such question, the evidence being in conflict, the question is one for the jury.

Error to Wayne; Hosmer, J. Submitted October 25, 1907. (Docket No. 146.) Decided December 10, 1907.

Assumpsit by Joel R. Gay against Fred O. Paige for services rendered. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Miller, Smith, Alexander & Paddock,* for appellant.

*Jonathan Palmer, Jr.* (*Elbridge F. Bacon,* of counsel), for appellee.

BLAIR, J. During the year 1900, the appellee, Gay, was employed by the appellant, Paige, who at that time was State manager of the Mutual Life-Insurance Company of New York, for the State of Michigan, as his agency director of the Grand Rapids agency, and in November in that year, they entered into a written contract, whereby appellee was appointed superintendent of agents for appellant over the southern peninsula of Michigan,

upon a salary and bonus. This contract was for one year, and further provided that appellee's work as superintendent of agents would at all times be subject to appellant's direction. Appellee's duties under this contract consisted in helping subagents of appellant and in doing almost anything appellant might ask him to do in promoting the business.

Under this contract, during 1901, appellee was sent about in the State by appellant, and in September, 1901, he was sent to Grand Rapids to help Gustav Myers, who was a subagent in appellant's employ and a heavy producer, but a perfect stranger there, while appellee was well known. As superintendent of agents, appellee could be and was of great assistance to Myers. In November, appellee wrote appellant that he had made an arrangement with Myers for joint work for the balance of the year, subject to appellant's approval. Under this arrangement, Myers was to give appellee a commission of 10 per cent. or thereabouts, and whatever commissions Myers gave appellee were to be turned over to appellant. Appellant told appellee to go ahead on that basis. Appellee claims that when Myers learned that the commission was going to appellant, he canceled his agreement with appellee, and that he (appellee) at once telephoned appellant to that effect. Appellant denies ever having received any such notice by telephone or otherwise. Appellant says he first learned that the agreement was canceled late in December.

During the period of his contract with defendant, plaintiff admitted receiving $900 from Myers and defendant admitted that there was due to plaintiff on their contract $412.14, for which he was entitled to a verdict, unless defendant was entitled to set off this amount of $900, as by his pleadings he claimed the right to do. The essence of the claim of appellant is, that any moneys received by plaintiff from Myers were, in reality, received because of services rendered Myers, which services were rendered in

the performance of his regular duties.    As stated by counsel for appellant:

"The most important and, practically, the only legal question involved in this case, is founded on the well-established rule that all profits made or advantage gained by an agent in the execution of his agency, belong to his principal."

It is the essence of plaintiff's position that the sums given to him by Myers were not given in recognition of any obligation to pay them, but, out of gratitude for plaintiff's assistance, as voluntary gifts by Myers to him out of moneys at the time belonging to Myers alone and in which neither plaintiff nor defendant had any interest whatever.

Among other things, the trial judge instructed the jury as follows:

"If you find in this case that Mr. Gay went to Grand Rapids—he performed these services in the line of his duty, because all these services were in the line of his duty, and that he did make a contract with Myers, and that Myers afterwards abrogated it and there was no expectation on the part of Mr. Gay at that time—I say expectation—that there was no expectation, based on anything that was stated between himself and Myers, that he was to receive a reward for what he did, but that thereafter—after the services were performed—as a mere voluntary offering of good will, Myers paid him this sum of $900, then and under those circumstances, and under those circumstances alone, would the plaintiff be entitled to recover.    Under those circumstances he would be entitled to recover the amount which he has claimed, viz., the sum of $412.14.

"If, on the other hand, as I said before, you should find from this case that what took place between Myers and Gay was actually really an evasion of the contract which was first entered into between them for a percentage of Myers' commissions in consideration of Gay's work, then unquestionably the defendant would be entitled to a verdict at your hands in the sum of $500.

"Now, it is true, gentlemen of the jury, there is no testimony in this case except the testimony of these two, showing what actually did take place between them.

There is no direct testimony and, in the nature of things, there could not be any direct testimony, but, gentlemen of the jury, in a case of this description, which has some things which you may believe are improbable in it, you are not compelled to believe the testimony of either one of them when it is said to be a voluntary gift, you may, from all the testimony, which has some things which may appear improbable to you, stamp the transaction as an evasion and a fraud, if, in your good judgment, you see fit so to do.    Now, I have nothing further to say on that subject."

The claims of opposing counsel were fully and impartially submitted to the jury and they were, in our opinion, correctly instructed as to the law of the case.    Mechem on Agency, § 472; *Ætna Ins. Co.* v. *Church*, 21 Ohio St. 492; *Lewis* v. *Loper*, 54 Fed. 237, 246, 247.

Judgment affirmed.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.