## �civil

## Richmond.

# HECKSCHER v. BLANTON AND OTHERS,

### AND

# HECKSCHER v. J. THOMPSON BROWN & Co.

January 13, 1910.

Reheard January 12, 1911.

1. FRAUD—*Joint Tort Feasors—Election to Sue One—Acquiescence as to Others—Case in Judgment.*—Several parties were the joint owners of real estate, the title to which stood in the name of one of the owners as naked trustee, without power to sell or to receive the purchase money if sold by the owners. The trustee, with the acquiescence of the other owners, employed a real estate broker to sell the property, and agreed to pay him a commission of ten *per cent.* After a satisfactory sale had been negotiated, the owners alleged that, by a secret agreement between the broker and the trustee, and in fraud of their rights, the broker had agreed to divide his commission with the trustee, and, with full knowledge of all the facts constituting the alleged fraud, they sued the trustee for the recovery of the commission he had received, and for an accounting. Two years and a half thereafter, and more than three years after knowledge of the alleged fraud perpetrated upon them, they sued the broker to rescind the contract of employment and to recover back the commission paid him.

   *Held:* The plaintiffs' election to sue the trustee only, and their acquiescence, after knowledge of all the facts, bars their recovery against the broker.

2. TRUSTEES—*Fraudulent Gains—Case in Judgment.*—Trustees, partners, or agents cannot by fraud, deceit, or concealment of facts, make and retain profits out of their *cestui que trust,* associates or principals, but, in the case in judgment, there is no proof of conduct on the part of the trustee which resulted, or might have resulted, in injury to his associates.

3. TRUSTEES—*Profits Not Resulting From the Trust—Diverted Profits—Legitimate Gains.*—It is not strictly true that all profits made

Opinion.

by agents or trustees belong to their principals, but only such as are thereby diverted from, or made out of, funds belonging to their principals. They cannot keep as their own what rightly belongs to their principals, but in order for such result to follow, the agency must be the proximate or direct cause of the profit. The profit must be traceable to the agency as its efficient cause, and not as its mere incidental occasion. The principal cannot recover of the agent or trustee that to which he was at no time entitled, and could never have demanded.

ON REHEARING.

4. APPEAL AND ERROR—*Parties—Bankrupts—Right of Trustee to Intervene—Failure to Intervene—Effect.*—Although a party to a suit was adjudged a bankrupt and his trustee appointed before the decree appealed from was rendered, he may be made an appellee in this court, and has the right to assign cross error under Rule VIII of this court. Under the Bankruptcy Act of 1898 the trustee has the right to intervene and become a party to a suit prosecuted by or against a bankrupt at the time of his adjudication, but he is not bound to do so. Upon the failure of the trustee to apply to be substituted in place of the bankrupt, or to become a party to the suit, it seems that it may be prosecuted or defended by the bankrupt, whether the results of the litigation enure to his own benefit or the benefit of his creditors; and the trustee, although he does not become a party to the suit, will be bound by the judgment or decree entered in the cause.

Appeal from a decree of the Law and Equity Court of the city of Richmond, in two causes heard together. Decree in favor of defendants, J. Thompson Brown & Co., who were defendants in both suits. Complainants appeal.

*Reversed in part.*

*Hill Montague* and *Samuel A. Anderson*, for the appellants.

*Wallace F. Brown, S. S. P. Patteson* and *Montague & Montague*, for the appellees.

BY THE COURT.

These cases, heard together, have been most elaborately and ably argued upon the printed briefs, as well as orally, and a

great number of authorities cited, but in our view the issues involved lie within a rather narrow compass.

The pleadings, original, amended and supplemental, put in issue whether or not the complainants have the right to require J. W. Blanton and J. Thompson Brown & Co. (hereinafter spoken of for convenience as Brown & Co.) to account to complainants for a certain commission—$10,000—received by Brown & Co., and afterwards divided with Blanton, for services in procuring a purchaser and consummating a sale to him of certain pyrites property, situated in Louisa county, owned by complainants and Blanton in unequal shares, as members of a syndicate or as partners, Heckscher holding the much largest share amounting in fact to about four-fifths of the whole.

The case here as to Blanton is a sequel to that of *Blanton v. Heckscher*, decided by this court, and reported in 101 Va. 42, 42 S. E. 915, in which the complainants sought only to recover of Blanton that part of the commissions paid Brown & Co. for making sale of the pyrites property theretofore, which Brown & Co. voluntarily donated to Blanton in consideration of valuable aid rendered by him to Brown & Co. in effecting the sale. By the amended pleadings it was sought to require both Blanton and Brown & Co. to account to complainants for the $10,-000 of commissions received by Brown & Co. for making the said sale which was consummated nearly three years before.

The learned judge of the law and equity court filed with and as a part of the decree now under review his reasons for the conclusions reached, and in so far as the opinion deals with and disposes of the question, whether or not Brown and Co. are liable to the demands of complainants for the commissions received by the former, we approve and adopt it as a part of the opinion of this court.

So much of the opinion as relates to the liability of Brown & Co. to complainants is as follows:

"The facts so far as the solution of this case is concerned

are as follows: Jos. W. Blanton was the trustee—i. e., held the legal title to certain mining property in Louisa county, Virginia, but the title he held was for the benefit of himself and certain others, Heckscher, Mann, Shuman, Smoot, Gill, and others, according to their respective interests, and they were to try and bring about a sale of this property, or rather Heckscher, Blanton, Mann and Shuman were to do so. Blanton, retains, shortly after the title was conveyed to him, J. T. Brown & Co. to sell this property as his and his associates' agent. It is conceded that Brown & Co. knew that Blanton held for the benefit of said associates or syndicate. After Brown secures an option from Crenshaw, which was completed by a purchase by Crenshaw and his associates, Brown writes a letter and agrees to give Blanton one-half of his commissions of ten *per cent.* It is claimed that this was in pursuance of a secret agreement to this effect at or about the time this property was put in the hands of J. T. Brown & Co. for sale. This is denied by Brown & Co., and Mr. Leroy Brown, of this firm, who did most of the negotiations, testifies that prior to the writing of the letter of July 1, 1899, to J. W. Blanton there was no agreement for a division of any portion of his commissions with Blanton. To the same effect is the testimony of J. T. Brown, and Blanton testifies that no such agreement existed prior to the letter of July 1, 1899.

"The firm of J. T. Brown & Co. secured an option from Crenshaw and his associates in February, 1899, which was availed of on July 15th or 14th for $100,000—but before the facts are further adverted to, it is well for me to state the proceedings in the two suits which are being heard together.

"The first suit was instituted by Heckscher, whose interest was about a four-fifths interest, G. N. Shuman, W. H. Mann and D. B. Cox against J. W. Blanton on June 15, 1900, alleging the sale and division of commissions, claiming that the division was in pursuance of a secret agreement between de-

fendant and the brokers who negotiated the sale under the firm name of J. Thompson Brown & Co., in fraud of plaintiffs' rights, and praying for a discovery and an accounting from defendant, Blanton, for the amount of money received by him thereunder, as well as for other money alleged to have been collected by said defendant for syndicate. On October 19, 1900, Blanton answered, denying all fraud and collusion and admitting said division and the amount received by him thereunder, but claiming that it had been voluntarily given him after the said sale was negotiated, in the absence of any agreement or understanding, and that, therefore, he had a right to receive and retain it. He also admitted that he had on hand a small balance belonging to the syndicate, which he was retaining in anticipation of a settlement of a claim he had preferred against the syndicate, but which he deposited in bank to the credit of the court in said cause, asking that his answer be treated as a cross bill.

"On July 16, 1901, this suit was heard on bill, answer, general replication thereto, and on certain affidavits alleging and denying that Blanton had disposed of his real estate in order to defeat plaintiffs' recovery, and a decree was entered requiring Blanton to deposit his share of said commissions in bank to credit of court in said cause. This decree was reversed upon appeal to the Supreme Court of Appeals, December 11, 1902.

"On January 7, 1903, the second of these suits was instituted by the same plaintiffs against said brokers, J. Thompson Brown & Co., as defendants. The bill was filed January 22, 1903, alleging the same facts but praying that said contract with the Browns for commissions be rescinded, and that they be required to pay to plaintiffs the entire amount of commissions retained by them out of proceeds of sale, less any amount plaintiffs might hereafter recover from Blanton in the first suit. On February 4, 1903, the Browns demurred, and on April 23d following, answered, denying all fraud and col-

lusion, admitting said division of commissions, but claiming it
was a gratuity. In their answer they plead also that plain-
tiffs were estopped from proceeding against them by laches,
acquiescence and waiver, and were barred by the statute of
limitations. On August 4, 1903, plaintiffs tendered amended
and supplemental bills in both suits, attempting to make the
Browns parties in the first, and Blanton in the second, and en-
larging the amount sued for in first suit to $10,000.00.

"On December 18, 1903, decrees were entered permitting
this in first suit, but denying it in second suit, and hearing
the amended first suit and the second suit together. The
Browns thereupon demurred to said amended and supple-
mental bill in the first suit, but on July 30, 1904, this demur-
rer and their said demurrer to the bill in the second suit were
both overruled. The depositions have been taken pro and
con, and the case is now for decision.

"The statute of limitations is relied on by the Browns, and
a strong and forceful argument is made that the one year
limit of the statute applies; but this court is of opinion that
the plea of the statute of limitations is not a good plea in
this case, and the same will be considered as overruled. And
yet, in view of the court's opinion on other branches of the de-
fence, this will not be necessary.

"In the first place, we should bear in mind as to the Browns,
that the suit against them for rescission on the ground of
fraud was not brought until more than three years and a few
months after, according to their own pleadings (i. e., the
plaintiffs') they knew of the fraud on them and their rights;
in other words, they sue one of the joint tort feasors for the
recovery of the commissions he received and for an account-
ing, and two years and six months after instituting this suit
against him, and more than three years after knowledge of the
plaintiffs of the wrong done them by the other joint tort
feasors, they institute a suit against those others for a re-
scission and reclamation. This court is not unmindful of the

fact that the position now taken after all the depositions and proofs are in is not the same taken on the demurrer, but upon an analysis of the letter of January 30, 1899, which is in evidence, in which the Browns agreed on certain conditions to accept a commission of five *per cent.*, in case a sale was made by the parties themselves at $75,000.00, when read in connection with the other evidence showing that the complainants or the chief one among them, Mr. Heckscher, knew of the division of the commissions of the Browns with Blanton, in the court's opinion does not relieve the estoppel as against the Browns. The plaintiffs, with a knowledge of the facts entitling them to a rescission, elect to sue Blanton only. It is true it is claimed that the exact amount of the division was not known to them, but if it was a fraud to divide equally the commissions, it was a fraud to divide the commissions by giving Blanton only a small part thereof.

"Upon the facts as developed in the evidence before this court, and upon the pleadings as they are, the court is of opinion that there can be no relief against J. Thompson Brown & Co., on account of plaintiffs' election made to sue Blanton only, on account of confirmation and acquiescence as shown by the evidence and pleadings, and the court cites as authorities for this proposition, Pomeroy's Eq. Jur., 965, 917, 817, 820; *Armistead* v. *Hundley*, 7 Gratt. 52; *Shoemaker* v. *Coke*, 83 Va. 1 [1 S. 1. 387]; *Max Meadows* v. *Brady*, 92 Va. 71 [22 S. E. 845]; *Hudson* v. *Waugh*, 93 Va. 518 [25 S. E. 530]; *Hurt* v. *Miller*, 95 Va. 32 [27 S. E. 831]; *Campbell* v. *Building Association*, 98 Va. 729 [37 S. E. 350]; *Adams* v. *Guerrand* [29 Ga. 651], 76 Am. Dec. 624; *Slothower* v. *Land Co.*, 2 Va. Dec. 506.

"In the court's opinion, so far as to the Browns, the case has been treated as if the allegations as to the secret agreement existing about or at the time the property was put into the hands of Brown & Co. had been sustained by the proof, under the well known rules of courts of law and equity as to

the proof of fraud. Has this been done? I think not. It may or not be true, but it has not been proven with that clearness and satisfaction that should or could warrant a court of equity in so holding.

"For these reasons the relief sought against the Browns will be denied."

With respect to the liability of Blanton to account to the complainants for the $5,000 donated to him by Brown & Co. cut of the commissions received by the latter on the sale to Crenshaw, while holding that there was no sufficient proof of the allegations in the bills as to a secret agreement existing about or at the time the property was put in the hands of Brown & Co., between the latter and Blanton, whereby Blanton was to receive a part of the commissions which Brown & Co. were to get if they effected a sale of the property, the decree entered, upon the view that "Blanton stood in the most confidential relations with his associates, and should not receive any part of those commissions, except his proportion thereof according to his interest in the syndicate as against his associates," required Blanton to pay into bank to the credit of the court in this cause the sum of $5,000, less the proportion that would come to him according to his interest, with interest from the time of the payment to complainants of their proportion of the proceeds of the sale of the property to Crenshaw. This ruling is assigned as cross-error by Blanton's counsel, under Rule VIII of this court.

To review the voluminous evidence, documentary and oral, as to Blanton's conduct in connection with the sale of the pyrites property by Brown & Co., and the receipt by him of a part of the latter's commissions on the sale, would serve no purpose other than to bring out, perhaps, more prominently facts which are not denied, but in fact admitted by Heckscher and his co-complainants, viz., that Blanton's aid to Brown & Co. was valuable, and without it the sale to Crenshaw would probably not have been effected; that Blanton received no part

of the proceeds of the sale which belonged to these complainants, or in any way reduced the amounts that they would or should have received had Blanton received no part of Brown & Co.'s commissions; that the efforts and persistency of Brown & Co., aided by Blanton, brought to complainants in the result thousands of dollars that they would not otherwise have gotten, and especially was this so as to Heckscher, the chief complainant, who was the largest holder in the property, and who had been urging a sale of it at a price much less than was finally obtained; that not only was the putting of the property for sale in the hands of Brown & Co. by Blanton acquiesced in by Heckscher and his associates, but approved, and the course and conduct of Blanton in connection with the whole transaction commended; that neither Blanton nor Brown & Co. got one dollar out of the transaction that the complainants were entitled to, or *ex aequo et bono* they could have demanded; and that neither Brown & Co. nor Blanton did anything that in the least misled the complainants to their loss or injury.

We are well aware of the established and salutary principle under a long line of decisions by this court, coming down to *Dunlop* v. *Tennant*, 97 Va. 235, 33 S. E. 620, and some later, that trustees, partners or agents cannot by fraud, deceit or concealment of facts, make and retain profits out of their *cestui que trust*, associate or principal; but that is not this case. We have searched the record in vain for some proof of conduct on the part of Blanton in connection with this transaction which resulted or might have resulted in the injury of his associates. It may be that in some of his interviews with Heckscher, after the sale of the property had been consummated, he should have, as a matter of propriety, told Heckscher that Brown & Co. had donated to him a part of their commissions; but his failure to do this resulted and could have resulted in no injury to Heckscher or others who had been interested in the sale of the property.

It is also well established by the authorities cited for complainants, that if an agent, trustee or other fiduciary makes, by fraud, deceit, or concealment, a profit out of a sale of the trust subject, "such profit belongs exclusively to the principal;" but, again, that is not this case. There is not the slightest proof that Blanton, by fraud, deceit or concealment, made a profit in this transaction. On the contrary, the proof is conclusive, as is recognized in the opinion of the lower court, that there was nothing hurtful to Blanton's associates concealed; that Blanton did not know of the purpose of Brown & Co. to divide their commissions with him until after the option had been given to Crenshaw, which was binding upon Blanton and his associates. Throughout, there is not a fact relied on going to show fraud, deceit or concealment on the part of either Brown & Co. or Blanton, resulting in loss or injury to complainants or either of them. Blanton was a mere naked or dry trustee holding only the legal title to the property, with no authority to make sale of it or to receive the proceeds of a sale thereof made by authority of the parties in interest. He received no part of the proceeds of the sale that was made, but the whole went to and was received by the parties in interest, less only the commissions they had agreed to pay Brown & Co.; and the fidelity of Blanton is evidenced by the fact that Heckscher offered Blanton handsome commissions, if he could sell the property for more than $60,000, provided the Crenshaw option was not taken up, yet Blanton continued his efforts and was largely instrumental in having the Crenshaw option taken up.

The principle upon which the numerous decisions relied on for complainants turned was where the wrongdoer had profits or gain which belonged of right to his principal, partner or associates, but that principle is not carried in those cases or others, so far as we are able to find, to the extent that one charged merely with wrongdoing should give up what *ex aequo et bono*, the party making the charge could not on any

other ground have demanded or been entitled to. Unquestionably one cannot receive and hold from another that which he has acquired by fraud, deceit or concealment, but if that other was never entitled to that which the alleged wrongdoer has, there is no principle of justice or equity that would entitle the party making the claim to a recovery.

In *Tennant* v. *Dunlop*, 97 Va. 234, 23 S. E. 620, the dealings charged to have been fraudulent, deceitful or misleading on the part of a surviving partner, and hurtful to the legatees of the deaceased partner, and which were set aside as void, so far as the legatees were concerned, were between the surviving partner and the executrix of the deceased partner. There the fraud, by concealment, practiced by the surviving partner, damaging to the complaining legatees, was clearly and conclusively proven, and upon the established principle to which we have adverted the wrongdoer, the surviving partner, was required to make good to the legatees of the deceased partner the losses they had sustained by reason of the fraud.

Here the complainants have lost nothing by fraud, deceit or concealment of Blanton, but are seeking to recover of him that to which they were at no time entitled, and, therefore, could not have demanded. What Blanton got came from Brown & Co., and only out of money belonging to Brown & Co., and in no event to complainants, as is conceded; so that, upon a supposed technicality only and not upon any principle of right in law or equity is their demand rested. This technical rule cannot, either upon reason or authority, be carried to the extent to which the complainants invoke it.

The learned author of Pom. Eq. Jur., vol. 2 (3rd ed.), p. 956, says of the general principle governing dealings of a person who is placed in such a fiduciary relation towards another that the duty rests upon him to disclose, that if he intentionally conceals a material fact, with the purpose of inducing the other to enter into an agreement, such concealment is an actual fraud, and the agreement is void without the aid of any pre-

sumption; but the conclusion is there stated to be, that the question whether or not such a fiduciary should be held to have, by concealment been guilty of fraud, and be required to account for any profits he may have received out of the transaction, turns upon whether he has or has not gained by his concealment *an advantage* over his *cestui que trust*, principal or partner. In the first instance he will be held to an accounting and in the other not.

Blanton, as the record shows, became at no time interested in Brown & Co.'s commissions on the sale to Crenshaw—certainly at no time when to do so was forbidden by law, or when he did or could have obtained an advantage over Heckscher and others interested with him in the property. On the contrary, the advantages arising out of Blanton's dealings with the property enured to the benefit of all parties interested, and more especially to the advantage of Heckscher, as he has frankly admitted.

It is not strictly true that all profits made by agents or trustees. such as was Blanton in this case, belong to their principals, but only such profits as are thereby diverted from, and therefore made out of, funds belonging to their principals. They cannot keep as their own what rightly belongs to their principals, but in order for such result to follow the agency must be the proximate or direct, not the remote or indirect, cause of the profit—i. e., the profit must be traceable to the agency as its efficient cause, and not as its mere incidental occasion. This principle is clearly recognized by this court in *Blanton* v. *Heckscher, supra,* where it was held that Blanton could not be required to bring into court the $5,000 received by him of Brown & Co. until proof sufficient to overcome Blanton's denial of liability to Heckscher and his co-complainants for this money was adduced. See also Mechem on Agency, sec. 472; *Etna Co.* v. *Church,* 21 Ohio St. 492; *Lamb Co.* v. *Lamb,* 119 Mich. 568, 78 N. W. 646; *Lewis* v. *Loper,* (C. C.) 54 Fed. 237; *Gay* v. *Paige,* 150 Mich. 463, 114 N. W. 217.

The line of cases relied on by complainants here, beginning with *Carter* v. *Horne*, 21 Eng. Rep. 832 (decided in 1728), do not militate against the doctrine above enunciated, viz., that it is not necessary in a case like this to show that the profit or gain sought to be recovered was made at complainants' expense; that it was a part of their property, or that they could have claimed or would have gained it had the recipient thereof not done so. *Jackson* v. *Pleasanton*, 101 Va. 282, 43 S. E. 573, where the principle is fully recognized. See also 1 Am. & Eng. Enc. L., p. 1073; *Herman* v. *Martineau*, 1 Wis. 141, 60 Am. Dec. 370; *Alexander* v. *N. W. Christian Univ.*, 57 Ind. 466.

This case, upon the facts proved, is simply this: Blanton was in no sense a trustee, except for the purpose of holding the dry or naked legal title to the trust property, not even having the power of sale; the property was placed with Brown & Co., with the approval of the complainants, to find a buyer willing to buy, ready and able to pay for the property at a price fixed; the commissions of the selling agents were agreed upon, and a binding option given, and there was no way in which Blanton's conduct could have been antagonistic to the complainants, except by agreeing to a secret division with Brown & Co. of the commissions, before or at the time the property was placed in the hands of Brown & Co., or before the option was given, which secret agreement was advantageous to Blanton and to the disadvantage of others interested with him in the property, and Brown & Co. would have consummated the sale at less than a ten *per cent.* commission, the usual and fixed commissions to the selling agent for the sale of such property. Of such conduct on the part of Blanton there is no proof whatever in the record.

We are of opinion that the cross-error assigned by Blanton to the decree appealed from is well taken; that said decree should in this respect be reversed and annulled; and this court will enter the decree the lower court should have entered, dis-

missing the original and amended bills of camplainants in these causes, as to Brown & Co., and remanding the causes for such further proceedings therein as may be deemed necessary or proper.

Absent, BUCHANAN, J.

### UPON A REHEARING.

BUCHANAN, J., delivered the opinion of the court.

In the petition for rehearing it is insisted that J. W. Blanton, one of the appellees, had no right to be heard upon this appeal, because he had been adjudicated a bankrupt and his trustee appointed before the decree appealed from was entered; and that he, therefore, had no further rights or interest in the litigation.

The trustee was not made, and did not become, a party to the suit, either in the trial court or in this court. Blanton was made one of the appellees in this court and process served upon him. Under the Bankrupt Act of 1898, the trustee has the right to intervene and become a party to a suit prosecuted by or against a bankrupt at the time of his adjudication, but he is not bound to do so. Upon the failure of the trustee to apply to be substituted in place of the bankrupt, or to become a party to the suit, it seems that it may be prosecuted or defended by the bankrupt, whether the result of the litigation enures to his own benefit or the benefit of his creditors; and the trustee, although he does not become a party to the suit, will be bound by the judgment or decree entered in the cause. See 1 Remington on Bankruptcy, secs. 1640, 1644; *Griffin* v. *Mut. Life Ins. Co.*, 11 Am. Bankrupt Rep. 622-3, 119 Ga. 664, 46 S. E. 870; *Herring* v. *Downing*, 146 Mass. 10, 15 N. E. 116; *Thatcher* v. *Rockwell*, 105 U. S. 469-70, 46 L. Ed. 949; *Brown* v. *Wygant*, 163 U. S. 623-4, 41 L. Ed. 284, 16 Sup. Ct. 1159; *First National Bank of Sacksboro* v. *Lassiter*, 196 U. S. 115, 119, 25 Sup. Ct. 206.

We are of opinion that Blanton had the right to assign cross-error under Rule VIII of the court.

The other grounds relied on for a rehearing were fully considered before entering the decree complained of. Upon a reconsideration of those grounds, we see no reason to change the conclusion reached. The opinion filed with the record upon the original hearing contains some slight inaccuracies of statement which have been corrected, and that opinion, as corrected, will be filed with the record.

*Reversed in part.*